Mr.'Chief Justice Shahicey
delivered the opinion of the court.
The appellees filed their bill in chancery to foreclose a mortgage on two sections of land on Deer Creek, which was executed to secure the purchase money. Thé right to foreclose as to one half of the land is not denie'd, but it is as to the other half, on the grounds set forth in the answers.
The land mortgaged was originally owned by Buckner and Connelly jointly. In the month of January, 1837, Stone met with Robards in Vicksburg, and contracted to sell him half of this land for $12,000, to be paid in negfoes. In order to consummate the arrangement, the parties proceeded to Washington county, the place of residence of Connelly, to obtain titles. From this it would seem that Stone must have previously contracted for the land. Connelly staled to them that he could not convey, as Buckner was joint owner; but he gave a bond in the penalty of ten thousand dollars, or rather entered into an article of agreement, by which he bound himself in these words : “ That for and in consideration of the sum of twenty-four thousand three hundred and thirty-two dollars, agreed to be paid by the said Stone in four equal annual instalments, on the first day of January in each and every year, the said Connelly, by these presents, binds himself, his heirs, executors, and administrators, in the penal sum of ten thousand dollars to convey unto said Stone and Robards by deed in fee simple, the following described tract of land, lying,” &c. This instrüment'was signed by Connelly and Stone, on the 7th of February, 1837. The answers aver that Robards thereupon conveyed the negroes. Matters seem to have rested in this condition until the 16th of May, 1837, when Stone took from Buckner and Connélly a conveyance'in his own name, executed his eight promissory notes for the purchase money, and gave the mortgage on the land to secure the payment, which mortgage was filed for record the 23d of June, 1837.
*88 The next conveyance (which is disclosed by complainants’ proof) is from Stone to Robards of an undivided, half of the land. It bears date, October, 1837, and must have been taken by Robards, with notice of the mortgage.
The proof next discloses a conveyance by Stone to Robards of the residue of his interest in the land, and also an undivided interest in certain negroes on the farm. This bears date 27th of February, 1840. It is also clear that Robards agreed with-Stone to pay the balance of the purchase money remaining unpaid, except one note.
These matters of evidence and the exhibits will show the main ground on which the foreclosure is resisted, as well as the grounds on which the defence is rebutted.
The agreement of Connelly is relied on as vesting in Robards an equity in a moiety of the land which could not be affected or defeated by the subsequent conveyance to Stone, or his mortgage. Before we proceed to the further investigation of this question, it seems to be proper to remark, that, allowing this instrument its full force, its operation is more limited than counsel seem to suppose. Connelly and Buckner owned the land. Connelly’s agreement to convey did not affect Buckner. Stone and Robards then only acquired an equity to an undivided half. To that much they had a joint claim. Robards was, of course, only entitled to one half of a half, or one fourth of the whole. Stone’s mortgage certain!y incumbered the interest which he derived under Connelly’s agreement, and if Robards’s equity be paramount, it still covers but a fourth of the tract of land. He is therefore asserting a claim which has no sort of foundation, when he seeks to exonerate half the land from the mortgage.
To understand thoroughly the right asserted by Robards, a further explanatory remark is necessary. The agreement of Connelly must be construed by its face; it is not subject to be varied by parol, neither can an agreement be partly in writing and partly in parol. We only understand by it, that Connelly agreed to convey on payment of the purchase money. A time was specified for the payments, but no time for the conveyance, and no intention of parting with title was manifested until *89 payment should be made. That seems to have constituted a condition precedent; he agreed to convey for and in consideration of the sum of $24,000, to be paid by instalments, and was not bound to convey without having received the consideration. Hazlip v. Noland, 6 S. & M. 294; Gibson v. Newman, 1 How. 341. We take it to be clear, that-a court of equity would not have compelled him, on this agreement, to part with his title ■until he had received the consideration. This will not be done in any case, unless it be clearly expressed as the intention of the parties, as in cases where a bond is given for title, it is usually understood that the vendor retains title as a security. Then suppose that Robards had a right to call for a specific performance for so much as Connelly could convey, this he could only do on payment of a proportional sum of the purchase money. The question now is, has he still that right, or has he waived it? It is believed that he has lost his recourse for specific performance by his waiver. It is undoubtedly competent for a party to waive the provisions of a written agreement by parol, so far as to enable the other party, to the contract to defend on the ground of waiver. Sugd. on Vend. 110, 111; 2 Story, Eq. Jurisp. 92, § 770; Price v. Dyer, 17 Vesey, 356. The conduct of Robards is wholly inconsistent with the intention of a reliance on the contract of Connelly. The agreement was dated in February, 1837; in May following, Buckner and Connelly conveyed to Stone, and took the mortgage, which was recorded. In October, we find Robards taking a conveyance from Stone of an undivided moiety of the land, with full warranty. It- is too much to suppose that he did this without a knowledge that the land had been conveyed to Stone. When they first contracted in February, he knew that Stone then had no title; he knew that it was in Connelly and Buckner. Would he have taken a deed from Stone if he had not known of the conveyance ? Surely he would not. Receiving a conveyance, under the circumstances, implies a knowledge of the conveyance to Stone. But it seems, moreover, that there was some variation in the contract) He had originally agreed to give Stone $12,000 for half the land; the consideration expressed in the deed is $10,000. This deed *90 was taken with constructive notice of the mortgage, for it was recorded. But he probably also had actual notice of the mortgage, for we hear of no difference between him and Stone on that account. They were jointly interested in the land, and seem to have been carrying on a farm together, and he subsequently stated, that the land was bound for the purchase money. In the next place, he took a conveyance of Stone’s moiety of the land and certain negroes, and the proof is full, clear, and conclusive, that he afterwards acknowledged himself to be bound for the unpaid purchase money, except one of the notes. This is shown by his letters to Connelly, and his declarations repeatedly made. He had thus willingly placed himself in Stone’s place. In none of his declarations, nor in any of his letters to Connelly, is the first contract mentioned. In offering to sell the land, he admitted that it was bound for the purchase money1. He did not then say that only half of it was bound. These circumstances seem to combine in leading to the conclusion, that the first agreement was abandoned. And in truth, there was no inducement to hold on to it, as by that the land was still bound for the purchase money. The last, indeed, was the most advantageous contract, as by that, title to the whole was acquired, instead of title to half; and the whole tract seems to have been the object of the purchase.
Whilst we regard the conduct of Robards as evincing an intention to waive the agreement with Connelly, such also seems to be the legal effect of his acts. His remedy on the agreement was for a specific performance. Against whom did it lie ? Not against Connelly alone, but Stone was also a necessary party. Connelly had parted with title after the agreement. When one by written contract agrees to sell land, and afterwards conveys to a different person who has knowledge of the previous contract, this other holds the legal title as trustee for the first purchaser, and a court of equity will compel him to convey. 2 Story, Eq. Jurisp. 110-113. The second purchaser is therefore a necessary party to a bill for specific performance. Sugd. on Vend. 164. Stone did purchase with knowledge of the agreement; he held the legal title as trustee. In such cases, the decree would *91 be, that the second purchaser should convey to the first, and if Robards had filed his bill, this would have been the decree against Stone, if indeed any decree could have been ipade. But Robards took a conveyance from Stone without suit, and acquired by contract what he could have coerced by decree. True, he has got an incumbered estate, but he could not have coerced title divested of an incumbrance, and as he takes by contract, with knowledge of the mortgage, he must be held as assenting to it, and as relinquishing his prior equity. Could he now go into a court of chancery, and ask for a specific performance? We suppose not. He who voluntarily receives a conveyance of an incumbered property, must be supposed to waive his right to a different conveyance. Robards took a deed with warranty from Stone, and would not be entitled to relief, even against in-cumbrances held by a third person; if he knew of their existence. His remedy in such case is on the warranty. That is his security against incumbrances. Robards can have no recourse against Stone on his warranty, on account of his own incum-brance, for he cannot disturb or evict himself under his prior title. Clearly as to Stone he has waived his equity; and having waived it as to Stone, he has also waived it as to Connelly. Could he resort to Connelly’s covenant for title with Stone, and assign as a breach his own incumbrance ? Certainly not, for as he could not assert that against Stone, so neither could he assert it against Connelly.
When Robards and Stone took Connelly’s agreement to convey the two sections, it was well known to them that he never could convey without the concurrence of Buckner, who was joint owner. It cannot be pretended, therefore, that they relied on Connelly alone to convey. Under such circumstances it has been holden, that the agreement will be presumed to have been executed by mistake, and the purchaser cannot insist upon a specific performance, even as to the interest which the vendor had. Sugden on Vendors, 220. It is not necessary that we should take this view of the agreement. It was looked upon, no doubt, as the first step towards the acquisition of title from Buckner and Connelly, and when that was made to Stone, who *92 conveyed a moiety to Robards, the purchase of the whole was considered as consummated, according to the original object of purchasers.
In every point of view, then, we consider the agreement with Connelly as having been waived, and as constituting no impediment to the right to foreclose, as to the whole of the mortgaged premises.
It remains to consider of the offsets claimed, which were disallowed by the chancellor. The first is claimed by Stone as against Buckner on the ground of his liability, as co-maker of a promissory note, which Stone claims by transfer from one of the makers, who is alleged to have paid the note. One E. F. Buckner was the principal in the note, and Puckitt, Coffee, R. H. Buckner, Cooper and Fitz, were co-sureties. There are two valid objections to this claim as an offset; first, there is no proof of payment by one of the sureties; and secondly, there is no proof that an effort has been made to obtain payment from the principal, or that he is insolvent. In such cases the principal is first liable; the liability to make contribution is secondary. McCormack v. Obannon, 3 Munford, 484. Nor is there any proof of the insolvency of the sureties who are alleged to be so.
The next offset is claimed by Robards, as the assignee or holder of a note made by Connelly, Stone and Williamson for $6842-72, payable to to G. W. Denton. This note it seems was the property of Jacob Wilcox, between whom and Connelly an agreement was made for its payment, in this way: Connelly held the note of Robards for $3000, which he transferred to Wilcox as collateral security, who agreed if the note for $3000 whs paid at maturity, the other was to, be delivered up to Con-nelly as fully paid. It seems that in June, 1843, J. M. Bell handed to Wilcox his acceptance on Robards’s draft for $1000, and also agreed to hand over to Wilcox, Robards’s note, then in his possession, for $2260, which was to be in payment of the $3000, and Bell also received of Wilcox both notes. In Bell’s receipt it is stated that Wilcox also transferred Connelly’s note to Robards, in case the agreement should be ratified by him. Robards received both notes from Bell, and now claims to have *93 the note of Connelly for $6842, set off against the amount claimed on the mortgage. In explanation of this transaction, Wilcox states explicitly, that he never intended to transfer the note as a claim against Connelly, that in fact he never did transfer it, and that it is still' his property. Bell does not say that he delivered it to Robards, to be collected by him, but that he very soon discovered that Robards intended to make an improper use of it. There seems to have been some misunderstanding between Wilcox and Bell, in regard to the note. But without entering into a full history of this transaction, it is perfectly clear from the proof that it is not a proper offset, Indeed, it is an unfortunate feature in the case, so clear is it that Robards has paid no consideration for it and ought not to have set it up in a court of equity. Wilcox says that he has not yet received the amount of the $3090. But suppose he had, why should he assign to Robards, Connelly’s note for $6842? There was no new consideration for it. It could not have been done to induce Robards to pay his own note, especially as it was handed over to him before he did pay his own. It is evident that Robards paid nothing for it; it is also evident that, should it be allowed, he gains the amount of the note, and Connelly loses the amount of the $3000 note transferred to Wilcox, and 'the agreement between Con-nelly and Wilcox is violated, which Wilcox says he is still willing to observe. This claim was referred to. two different commissioners, and disallowed by both, and we think correctly so.
The degree must be affirmed.