RHOADS v. PEOPLES BANK & TRUST CO. *et al.*

(In Banc. Oct. 14, 1946. Suggestion of Error Overruled Nov. 25, 1946.)

[27 So. (2d) 552. No. 36161.]

W. C. Sweat and B. F. Worsham, of Corinth, and E. K. Windham, of Booneville, for appellant.

**C. R. Bolton**, of Tupelo, for appellants, J. F. Kingsley et al., against W. R. Rhoads, as appellee.

**C. R. Bolton,** of Tupelo, and **J. A. Cunningham,** of Booneville, for appellees, Peoples Bank & Trust Company and Seth Pounds.

**J. S. Finch,** of Booneville, for appellee, Roy Bonds.

We adopt the brief of counsel for appellees, the Peoples Bank & Trust Company and Seth Pounds.

Argued orally by **B. F. Worsham,** for appellant, and by **C. R. Bolton,** for appellees.

**Alexander, J.,** delivered the opinion of the Court.

Appellant agreed with one Hawkins, a non-resident, for the purchase of certain business property in the Town of Booneville. Execution of the agreement was to be effected by draft drawn by Hawkins upon Rhoads in the agreed sum of $14,000 to be sent with deed attached through the Third National Bank of Nashville to the Peoples Bank & Trust Company at Booneville. This procedure was followed, and the draft with deed to Rhoads attached reached the bank at Booneville on Friday, July 21, 1944. On the same day, the appellee bank received a letter from Hawkins giving full instructions regarding the disposition of the proceeds of the draft. These directions included an authorization to pay one Martin who held a note of Hawkins in the principal sum of $5,000, with interest, secured by deed of trust on the property. There were also directions regarding deductions for current and past due taxes. The letter marked "attention Mr. Seth Pounds" stated: "I have sold the four store buildings there in Booneville to Mr. Roy Rhoads," and

requested the bank to "handle it like it was your own settlement you were making," and concluded as follows: "Should any question arise in closing the matter will appreciate your calling me at 6—7158 during the day, or at my home 9—1926 after 6 P. M. reversing the charges." .

The next day, Saturday, July 22nd, Rhoads called Pounds stating that he was ready to close the deal. Pounds' suggestion that the matter be carried over to the following Monday was accepted. On Monday, Rhoads called at the bank bringing $14,000, which sum was at his request not deposited in the bank but placed for safekeeping in the bank's vault. Personal receipt therefor was given him by Pounds. In view of the fact that the instructions of the Nashville Bank accompanying the draft took no account of adjustments or deductions for paying the Martin note or the taxes, and since the initials of the grantee were inadvertantly incorrect, Pounds was unwilling to proceed along the lines set out in the letter of Hawkins and in the face of the instructions from the Nashville bank to "Release attached deed only upon payment of draft."

Pounds thereupon called Hawkins by telephone, requesting him to authorize the Nashville bank to amend its instructions to conform to Hawkins' letter. This bank thereupon wired the appellee bank to accept collection in accordance with said letter. This telegram was sent July 24th, and was received by the bank about 9:30 A. M. the next day.

During this interval, occasioned by the delay in getting amended instructions, Rhoads, through his attorney, checked the title to the property, verified the amounts due for taxes, and paid Martin the amount due upon his note, procuring assignment of the deed of trust to himself. All of these transactions were made known to Pounds who assisted in some degree their consummation. In fact, the amount requested to pay Martin was taken out of the funds entrusted to the bank, and as a matter of course with its knowledge and assistance.

When these prerequisite details had been concluded, Rhoads informed Pounds that he would return the next day to receive his deed. The following day the attorney for Rhoads called Pounds advising him that Rhoads, who lived at Corinth, was enroute to Booneville to close the deal. Pounds acknowledged the information and indicated his assent thereto. When Rhoads arrived he was unable to locate Pounds. It was then not disclosed by Pounds nor the bank that in the meantime the deed and draft had been returned to the Nashville bank upon its telegraphic instructions.

The background for the unheralded return of the papers by the appellee bank is an important factor. Pending adjustment by Rhoads of the details agreed upon and requested by Hawkins, the appellee Bonds became interested in the purchase of the identical property. He consulted Pounds, whose son was married to Bond's daughter, and procured a personal loan of $7,000 to buy "some property" and offered a mortgage thereon if Pounds desired. The property was not to cost over $15,000. Pounds was unwilling to concede that he knew of Bond's purpose to supersede Rhoads' negotiations, but did not go far as to deny that he was aware of Bond's purpose. In reply to the question whether he would have disclosed the fact of Rhoads' negotiations to Bonds had the latter inquired, he stated that he did not know whether he would have done so.

The attorney for Bonds was fully aware of the sale to Rhoads and the efforts of Rhoads and his attorney to consummate it, including the payment of the Martin note. He conceded that he had discussed with Bonds the purchase of the property. He had been of assistance to Rhoads' attorney in clarifying the title. At Bonds' request, he made contact with Hawkins about a new contract, whose execution would frustrate Rhoads' negotiations. At Bonds' request, he went to Nashville prepared and authorized to raise the Rhoads' offer by $600, and procured a deed from Hawkins for a gross consideration

of $14,600. This witness wavered between affirmance and denial when questioned regarding Bonds' familiarity with the Hawkins-Rhoads deal.

We have not elaborated upon the testimony to set forth the entire circumstances, all of which are inconsistent with an exoneration of Bonds of any knowledge of Rhoads' negotiations. Our conclusion is reinforced by the necessity of attributing to Bonds, not only the knowledge of his attorney by whose interest and alacrity he was enabled to circumvent Rhoads, but also such knowledge as would have been completely revealed had he looked beyond the weather-vane of circumstances whose winds had turned its point toward Rhoads and the rights which the law had thrown about him. First National Bank v. Johnson, 177 Miss. 634, 171 So. 11; Beauchamp v. McLauchlin, 200 Miss. 83, 25 So. (2d) 771.

We do not see the position of the bank and of its officer Pounds otherwise than escrow agents. By the terms of the deposit of the deed by Hawkins and the money by Rhoads, as well as by Hawkins' own letter to the bank, Hawkins had sold the property to Rhoads, who had at no little expense of time and money manifested his ability, willingness and readiness to meet the conditions of the escrow.

Original bill was filed by Rhoads seeking alternately decree against Hawkins, Bonds, Pounds, and the appellee bank for damages, as well as a reconveyance of the property to him. J. F. Kingsley and wife were joined as defendants who were indebted to the non-resident. The chancellor awarded damages against Hawkins in the sum of $4,820, being the amount of the indebtedness owed him by the Kingsleys, who were held bound, as in garnishment, to complainant for the amount they owed Hawkins. The remaining defendants were acquitted of the charge of connivance, and the bill as to them was dismissed. Rhoads appeals, and cross-appeal is filed by the Kingsleys.

We shall not pass upon the liability of Pounds, nor of the bank, and shall suspend decision upon the validity of

the decree against the Kingsleys, here attacked upon their appeal as being invalid for want of proper process, and otherwise. Our concern is chiefly with the effect of the conduct of the defendants upon the rights of Rhoads.

The strength of the evidence supporting the existence of a purpose to thwart consummation of the Hawkins-Rhoads contract is measured by its ability to withstand the pressure of any hypothesis whose ingredients are a complete ignorance of Rhoads' negotiations and existing rights, and the rather bizarre coincidence that Hawkins and his property should become simultaneously the coveted object of two prospective buyers who pursued their negotiations through the mazes of their ramifications, consulting the same parties and records in obedience to a fate whose ingenuity scrupulously spared them contact and preserved their innocence.

To adopt such hypothesis would place a larger discount upon the acumen of Bonds than its rejection bestows upon his fair dealing. As to the latter, our duty to add to his own knowledge that of his attorney need imply not iniquity but only inequity.

The deed and note constituted an escrow whose conditions were understood by all the parties thereto. The manner and circumstances of its circumvention charge Bonds with the duty to account therefor to Rhoads, who had gone to pains and expense to meet its conditions, and from whose outstretched hand the deed was withheld by conduct which was the product of more than coincidence.

The property was taken by Bonds subject to the equitable and legal rights of Rhoads, and under circumstances which charge him as constructive trustee thereof for the benefit of the original purchaser. Stone v. Buckner, 20 Miss. 73. In addition to the authorities cited in appellant's brief, see also Hines v. Baine, Smedes & M. Ch. 530; A. L. I. Rest. Trusts, Sections 26(i), 32(c); 19 Am. Jur. Escrow, Sec. 29, p. 451.

Under the allegations and prayer of the bill, as well as the testimony, the transfer of the property to appellant

will give to him a full measure of relief. Wherefore, we set aside the decree in its entirety, with directions to the trial court to decree transfer of the lands to Rhoads by Bonds, or by the clerk of the court as commissioner, together with accounting for ad interim rents and interest, upon compliance with the unexecuted conditions by Rhoads. Such disposition dispenses with the necessity for adjudicaiton by us of the liability of the remaining defendants, as to which the entire matter is left open for further inquiry in the event other additional or alternative rights of appellant are brought into play.

Reversed and remanded.

**Sydney Smith, C. J.,** did not participate in this opinion.