# BONDS *v.* RHOADS.

(In Banc. May 10, 1948. Suggestion of Error Overruled June 14, 1948.)

[35 So. (2d) 437. No. 36744.]

J. S. Finch and J. A. Cunningham, both of Booneville, and C. R. Bolton, of Tupelo, for appellant.

W. C. Sweat and B. F. Worsham, both of Corinth, and E. K. Windham, of Booneville, for appellee.

Argued orally by **C. R. Bolton**, for appellant, and by **B. F. Worsham**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

On the former appeal of this case, when the same was styled Rhoads v. Peoples Bank & Trust Co. et al., as reported in 200 Miss. 606, 27 So. (2d) 552, the opinion reversing the case gave an accurate statement of the facts which constitute the basis for the decision of the particular phase of the case now remaining for decision on this appeal. Those facts and circumstances will not be here again set forth, but we will supplement the same by a statement of the additional testimony developed on the accounting at the trial after the cause was remanded, on the limited issue now involved. We emphasize, however, that it will be necessary for the reader to have clearly in mind the entire case stated in the former opinion in order to fully understand the basis of the decision now being rendered.

All of the parties defendant mentioned in the former opinion remained such during the trial on remand. However, on the second trial, the complainant did not press his demands against all of the defendants, but pursued only his remedy against the defendant R. F. Bonds; and the final decree granted no relief against any of the other defendants save as to the taxation of costs, from which

they do not now appeal—that is to say, the defendant Bonds alone has prosecuted this appeal. He assigns as error the decree of the trial court on the second trial whereby he was required to pay to the appellee, Rhoads, the monthly rents which he had collected on the four store buildings involved, since July 26, 1944, less the taxes, cost of insurance and repairs, and was charged with interest on the rents so collected, without at the same time being allowed a credit thereon for the legal rate of interest on the $14,000 purchase price paid by him for this property, the sale of which constitutes the subject matter of the suit here for specific performance.

It will be noted from the former opinion that the first decree of the trial court was in favor of all the defendants then involved and was set aside by this Court in its entirety, and then reversed "with directions to the trial court to decree transfer of the lands to Rhoads by Bonds, or by the clerk of the court as commissioner, together with accounting for ad interim rents and interest, upon compliance with the unexecuted conditions by Rhoads."

The only condition which remained to be executed by Rhoads was the payment by him of the sum of $14,000, which he was willing, ready and able to pay upon the execution and delivery of the deed of conveyance by either the defendant Bonds or the clerk as commissioner; and the trial judge, on the second hearing of the case, expressly found as a fact that Rhoads "had the money in the hands of the proper party to pay the purchase price when the deed arrived at the bank, and he has at all times been ready, willing, and able to pay the purchase price since that time."

We think that the trial court had ample evidence upon which to make such a finding. This language, used in the trial court's opinion and finding of fact, had reference in the first instance to the money which Rhoads had carried to the bank in cash and left there on July 24, 1944, pending delivery of a deed to him by the bank which had been executed by the original vendor, Hawkins, and two days

later withdrawn by him from the bank when the defendant Bonds had in the meantime wrongfully thwarted the consummation of this sale from Hawkins to Rhoads and obtained a deed from Hawkins to himself instead.

Our former opinion sets forth in sufficient detail the circumstances surrounding the accomplishment of the substitution of Bonds in place of Rhoads as purchaser from Hawkins and the part played by each of those who aided in that behalf. And, although we did not then expressly declare that Bonds thereby became a trustee, mala fide, of the property, such a meaning is to be readily discerned from what the opinion did state in a more charitable manner.

After the sale from Hawkins to Rhoads had thus been circumvented and defeated by the participants in the consummation of the sale to Bonds, it is shown that Rhoads, of course, went to the bank and repossessed the full amount of the purchase price which he had agreed to pay Hawkins, who had in the meantime placed Bonds in possession of the four store buildings involved in the sale. And the proof on the trial, after the remand of the cause, does in fact disclose, as contended for by the appellant Bonds on this appeal, that this $14,000 was then used by Rhoads in the conduct of his own business affairs, including $5,300 which he had already paid to the holder of an outstanding deed of trust on the property in favor of one Martin, before learning that the sale to himself had been circumvented, and which latter sum was refunded to him by the defendant Bonds, shortly thereafter. But when Rhoads, upon being advised of his rights in the premises, filed suit for specific performance against all the parties defendant in October 1944, he stated in his bill of complaint that "Your complainant would show unto the court that he is now, was at the time, towit, in July 1944, and has ever since been fully capable, financially able and wholly willing and ready to pay the $14,000 for the property."

It will be noted, however, that the foregoing statement in the bill of complaint makes no reference to any offer to pay interest on the purchase price. Therefore, if the defendant Bonds was entitled as a constructive trustee, mala fide, to collect interest on the purchase price pending the execution by him of a deed to complainant for the property, then of course, the offer made in the bill of complaint would not constitute a legal tender. However, the precise question to be decided here is not whether the complainant made a sufficient tender in his bill of complaint to stop the further accrual of interest thereafter, but is whether or not any interest ever began to run in favor of the defendant Bonds after he had wrongfully thwarted the complainant in his purchase of the property in question.

Our adjudication on the former appeal which directed the trial court to decree a transfer of the property by the defendant Bonds to the complainant Rhoads, or by the clerk of the court as commissioner, was in effect a holding that the complainant had precedently done and performed all things required of him under the law to entitle him to the deed of conveyance, except the actual *payment* of the purchase price. If the pleadings and proof had not disclosed that the complainant was ready, willing, and able to pay the same, then we would not have been justified in holding on the former appeal that he was then entitled to the deed in a suit for specific performance, to be executed either by the defendant Bonds or the clerk as commissioner.

Manifestly, from the proof in this record, the defendant Bonds would not have accepted either $14,000 or that amount plus the interest thereon if the sum had been carried and offered to him at any time prior to the rendition of our former decision which required that he convey the property to the complainant. In the case of McLain v. Meletio et al., 166 Miss. 1, 147 So. 878, 879, is to be found the following statement: "The law does not require one to do a vain and useless thing. A formal tender is never

required where it appears that the money if tendered would not have been received. 26 R. C. L. 624, Pt. 3.'' And in the case Sovereign Camp, W. O. W., v. McClure, 176 Miss. 536, 168 So. 611, 612, 170 So. 293, it is stated: ''Failure to make a formal tender may be excused if it appears that the tenderee would not have accepted the tender if made; but to avail himself thereof, the tenderer must show that he was able and desired to make the tender.''

We are, therefore, of the opinion that what was done by the complainant was at all events sufficient to entitle him to maintain this suit for specific performance, since he is shown by the proof to have been ready, willing, and able to pay whatever amount the court should have adjudged to be legally due as a consideration for the execution of the deed in his favor.

Without regard to whether or not under ordinary circumstances the tender made by the complainant was sufficient to stop the running of interest, if any, on the purchase price of the property, we pass to a consideration of the point as to whether or not the defendant Bonds is in a position to assert a counterclaim for any interest at all on the purchase price in an accounting required of him in favor of the complainant for the rents on the property during the time within which his wrongful act had deprived the complainant of the possession thereof, put him to the expense of this protracted litigation, denied him the opportunity to make such changes and improvements as may have been desired, and the privilege of making such other use thereof as he may have deemd advantageous, that is to say, whether or not a court of equity will award him any relief under such circumstances other than a refund of the purchase money which he paid and which was tendered back to him in the bill of complaint.

It seems to be the general rule that as between a vendor and purchaser, as, for instance, between the owner Hawkins and his intended vendee Rhoads, interest is allowed

to the vendor on the purchase price where the vendee is given possession of ths property pending any delay in the consummation of sale due to inability to promptly perfect the title, etc. But it has also been held that where the vendor wilfully and wrongfully withholds the possession and also wrongfully fails and refuses to consummate the sale until required to do so by a decree for specific performance, he will nevertheless be allowed, in an accounting for the ad interim rents, interest in such amount on the unpaid purchase price as does not exceed the amount of the rents and income received by him, forfeiting the excess of interest, if any. On the other hand, if the purchaser has not been in possession, and the contract is not carried out on account of the fault of the vendor, the purchaser cannot, according to some of the cases, be charged with interest on the purchase money in a suit by him to enforce specific performance of the contract, as where the delay is due to the failure and neglect of the vendor to perfect his title. In other such cases, some of the courts have charged the purchaser with interest and credited him with the amount of the rents received by the vendor while possession is retained by the latter. 26 R. C. L., Secs. 271, 272, 537, 538. This is on the theory that in the meantime the vendor has held the property as trustee for the vendee and the latter has retained the purchase price in the same capacity.

Other cases hold that in order for the purchaser to escape liability for interest on the purchase money pending the enforcement of his remedy for specific performance, he must actually set aside and appropriate the money so that he has not had the use of it or interest on it; but this rule does not apply, according to the decisions of many of the courts where the failure of the vendor is willful and wrongful, although there are decisions to the contrary. Wilcox v. Commonwealth Realty & Trust Co., 248 Mich. 527, 227 N. W. 678, 75 A. L. R. 307, and Leafgreen v. LaBar, 300 Pa. 369, 150 A. 656, 75 A. L. R. 312; and the elaborate annotation under the Leafgreen case

contains numerous decisions pro and con as to what is necessary to be done by the vendee in order to avoid payment of interest to the vendor on the purchase price.

In the instant case, however, the possession of the property was withheld from the vendee until the decision of this court required the defendant Bonds, as a constructive trustee, mala fide, to execute the deed to the complainant as the original, intended vendee of the said Hawkins. And no case in point is called to our attention on the question as to whether or not a third party, who has injected himself into and wrongfully conspired in bringing about the defeat of the consummation of the sale of property in which he had no interest, and who is therefore in the position occupied by the defendant Bonds, is entitled to avail himself of the rule that may have been applicable as between Hawkins and the complainant Rhoads.

When the defendant Bonds virtually snatched the deed from the hand of complainant Rhoads when he was about to receive the same from the bank after its execution by Hawkins, and took and retained possession of the property, he owned no interest whatever in the subject matter of the sale, and he acquired by his wrongful act only the naked title thereto, which he has at all times held as constructive trustee, mala fide, for the benefit of the complainant Rhoads. And we think it more equitable and just that he be required, as was done by the decree of the trial court herein appealed from, to account to the complainant for the rents which he collected, and that he receive in return only the purchase money in the amount of $14,000 paid by him for the property, as tendered to him in the bill of complaint. To hold otherwise would mean that one may intervene in wrongfully thwarting a sale to his own advantage and either keep the property because of a failure of the injured party to seek a vindication of his rights or collect his six per cent legal interest on the purchase money, thereby having all to gain and nothing to lose by his wrongful conduct.

The decree here appealed from adjudged that the defendant Bonds has collected and received in rents from the property the sum of $2536.89 including the sum of $238.01 calculated as interest on the rents collected, as the difference between the amounts collected by him and the expenditures which he paid out for taxes, insurance, and repairs on the property. The decree further adjudicated that the sum of $1500.40 was due and owing by an insurance company for a fire loss on the property, and this amount was ordered to be paid direct to the complainant Rhoads as a credit on the $2536.89 as collected as rents, leaving a balance of $1036.49 due by the defendant Bonds to the complainant Rhoads, and the decree directed the said Bonds to execute and deliver to Rhoads the deed of conveyance to the property as prayed for upon the payment by the latter of the net purchase price of $14,000; and we are of the opinion that this decree should be affirmed.

Affirmed.