COOLEY *v.* STEVENS

No. 41744 March 27, 1961 128 So. 2d 124

*Snow, Covington & Shows,* Meridian, for appellant.

*Welch, Gibbes & Graves,* Laurel, for appellee.

LEE, P. J.

On May 23, 1959, Mrs. N. Louise Cooley, the sole devisee of R. E. Cooley, deceased, filed her bill of complaint against Mrs. Pauline Golden Stevens, the sole surviving heir at law of her father, Robert Golden, to compel specific performance of an alleged contract by requiring the acceptance of the balance of the purchase price and the delivery to her of a good and valid warranty deed to the parcel of land, as described therein. The answer of the defendant denied the material allegations of the bill. At the conclusion of the evidence, the Court denied the relief prayed for and dismissed the cause on its merits. From the decree entered, Mrs. Cooley appealed.

The controversy arose in this way: On March 9, 1953, Robert Golden duly acknowledged that he signed and delivered a written instrument which, in its preamble, in effect, recited that he was the owner of the lot of land, described in the bill, and was a wholesale distributor of Gulf Refining Company's products and would sell gasoline and other Gulf products to Cooley at the prevailing wholesale prices so long as he was such distributor; that R. E. Cooley desired to purchase the lot for the storage of gasoline and similar products for the use of his business; that it was agreed between the parties that the purchase price of the property was $6,650 ''to be paid at any time within a period of five years from the date hereof, upon the delivery of a good and merchantable fee simple title to said land by the said Robert Golden to the said R. E. Cooley''; that to the wholesale prices there should be added 2 cents per gallon for gasoline delivered and it would be paid to Golden at the end of

each month, or the sum of $75, whichever amount was greater; and that Golden should credit such amounts against the purchase price of the land as the same were paid. In the event of a default of the payment of any amount due, Golden, at his option, could declare the entire unpaid amount to be due after 130 days from default, and all payments made prior to such default could be retained as rent and the contract could be declared void and of no further effect. Following such preamble, the instrument then provided as follows:

"NOW, THEREFORE, in consideration of the sum of ONE DOLLAR ($1.00) cash paid by R. E. Cooley to Robert Golden, the receipt of which is hereby acknowledged, the said Robert Golden does hereby agree to sell and convey by general warranty deed the above described property to R. E. Cooley, at any time within the period of five years from the date hereof, upon the payment or tender by the said R. E. Cooley to the said Robert Golden of the sum of SIX THOUSAND SIX HUNDRED FIFTY AND NO/100 DOLLARS ($6,650.00), cash, plus interest at the rate of six percent (6%) per annum on the unpaid balance of said sum until paid and the said R. E. Cooley does hereby agree to purchase said land from the said Robert Golden at any time within five years from the date hereof and he agrees to pay the said Robert Golden the sum of SIX THOUSAND SIX HUNDRED FIFTY AND NO/100 DOLLARS ($6,650.00) plus interest at the rate of six percent (6%) per annum from the date hereof on the unpaid balance thereof until paid, and it is further mutually agreed and understood that the said R. E. Cooley shall use Gulf Refining Products at said location and that he shall purchase the same from the said Robert Golden at the prevailing wholesale price of such products from day to day and time to time; and it is further mutually agreed and understood that at the end of each month hereafter and during the life of this contract and while there is any

balance of principal and interest due hereunder the said R. E. Cooley shall pay to the said Robert Golden an amount equal to 2 cents per gallon on all gasoline which might have been delivered or sold to the said R. E. Cooley by the said Robert Golden during the preceding month or the sum of $75.00 whichever amount is the greater and the said Robert Golden shall credit said amounts against the purchase price for said land and improvements as the same were paid. In the event of default in the payment of said amount or amounts as they become due, the said Robert Golden may, at his option, declare the entire unpaid balance due after 130 days from such default and all payments made prior to such default hereunder may be retained as rent and this contract declared void and of no further force and effect. It is further mutually agreed and understood, however, that the above method of payment of the consideration for said land shall not be exclusive and that the said R. E. Cooley may, at his option, at any time within said five years pay or tender to the said Robert Golden the entire balance of principal and interest then due on said purchase price and the said Robert Golden will thereupon and immediately convey said land and improvements to the said R. E. Cooley free from all liens, restrictions or encumbrances of any kind whatsoever.

"The said R. E. Cooley shall have immediate possession of said premises and shall maintain fire and extended coverage insurance sufficient to cover the unpaid balance on said purchase price, with clause payable to the said Robert Golden in the event of loss.

"This contract shall extend to and bind the heirs, devisees, administrators, executors and assigns of the parties hereto."

W. Vol Jones, the attorney who prepared the instrument, testified that Cooley and Golden, at the time, were attempting to purchase the property in question; that they came to his office; and that he drew the instru-

ment in accordance with their wishes. He prepared an acknowledgment for Golden, as the owner of the property, to execute, and advised him that it would be necessary for him to acknowledge the execution and delivery. He expected both of them to sign the paper, and made two lines for that purpose. He delivered the original and a copy to the parties and kept a copy for his file. Later he prepared the deed to the property from Lloyd McNeil to Robert Golden, which was dated March 23, 1953.

Golden died November 6, 1953. Tom Stevens, the husband of appellee, acted for her and in the administration of the estate. He found that Cooley was in arreas in the sum of $300, but, when he called the matter to Cooley's attention, payment was made promptly. Either in December 1953 or in January 1954, Cooley told Stevens and his attorney that he had this contract with Golden. Stevens said that he asked Cooley to produce it, but that he never did so. As a result, Stevens said that he closed the estate without any disposition of the matter on the assumption that there was no contract.

R. E. Cooley died on August 1, 1954. Several checks, in the sum of $75 each, dated May 1953 and October 1954, payable to Robert Golden and Mrs. Robert Golden, with a notation of payment on service station, and endorsed by them, were offered in evidence.

In October 1957, John Robert Cooley, general manager for the business of his father, R. E. Cooley, showed Stevens the contract. Stevens admitted that he saw the instrument and told John Robert that he knew nothing about it except that R. E. Cooley, in his lifetime, had told him that he had a contract. Stevens then told John Robert that it would be for the lawyer to say. He further said that he never found the other copy in Golden's effects. Thus whether or not Cooley signed it is unknown.

John Robert Cooley testified that, about 15 days before the expiration of the 5-year period, he told Stevens that

they would like to remove the old station; that the unpaid balance was then so low that the lot was ample security for it; that they would like to extend the contract and continue to pay at the same rate; but, if he would not agree to that, they (meaning his mother) would exercise their option to buy under the contract. Again Stevens told him that he could not give an answer —he would have to talk to his wife and consult their lawyer. Either five or six days later, having heard nothing from Stevens, again John Robert asked· him about the matter, telling him that his mother was ready and able to carry out and finish the contract. But again Stevens told him that he had not found out about the matter; that his lawyer had not had a chance to look into it; and that he would let him know in a day or two. It was not until April 9, 1958, that a communication was received from the lawyer, which was as follows:

"Mrs. Pauline Stevens has conferred with me about the request of your mother that you be allowed to take down the building owned by Pauline next to your place of business for use as a filling station.

"After fully considering the matter, she has determined that she does not desire the building torn down; however, she is willing to continue to rent the property to you or Mrs. Cooley on the basis of $75.00 per month."

All during this time, Mrs. Cooley was current with her payments and continued to be current on March 9, 1958. She had never been declared to be in default. She had at all times paid the insurance premiums on the property, as provided in the contract. Stevens was asked this question: "Did you ever recognize that contract as a contract?", and he replied, "No, I have never recognized it as a contract." He did say that the Cooleys never offered to pay him.

With her sworn bill, Mrs. Cooley attached a schedule of payments showing the date, the check number, to whom payable, the amount of the payment, the remain-

ing balance of the $6,650, the number of days between payments, and the interest thereon, all of which aggregated a balance of $2,806.33, which she paid into the registry of the court with the filing of her bill.

The contentions of the appellee, necessary to be dealt with, are as follows: (1) The document showed on its face that it was necessary for both parties to sign because the mutual obligation indicated such necessity. (2) For specific performance, the contract had to be mutual in order to be enforced by either of the parties. (3) There was no unconditional tender of the balance of the purchase price.

On the contrary the appellant contends that Golden could be sued for specific performance even though Cooley did not sign the instrument; that she complied fully with the contract; that she was able and willing to pay the entire balance due and communicated her wishes to the appellee, but that the appellee dodged the issue each time by saying that she would have to get the advice of her lawyer; and that, to say the least, she made full payment into the registry of the court at the time of filing her bill.

██ █ In 49 Am. Jur., Specific Performance, Sec. 34, pp. 46-8, there is a treatment of the doctrine of mutuality of obligation and remedy. In Sec. 35 thereof, it is pointed out that, in the earlier cases, the remedy of specific performance had to be available to both parties in order to be available to either; and that this view sprang up in England in 1848, and came to this country where it was then accepted literally by some writers and courts. But it is said that such interpretation now "probably no longer represents more than a minority rule." In Sec. 36, pp. 50-1 thereof, in pointing out the present rule, it is said: "It is now the generally accepted rule of both courts and text writers that in the absence of any statutory limitation, specific performance of a contract at the instance of one party will not be denied merely because

of the fact that remedy by way of specific performance is not available to the party against whom the enforcement of the contract is sought. Conversely, the doctrine of mutuality of obligation and remedy does not entitle one party to a contract to specific performance merely because the other might have obtained such relief. Thus, the fact that one party to a contract is entitled to have specific performance of such contract decreed by a court of equity does not entitle the adverse party to a decree of specific performance in his favor if a breach of the contract may be adequately compensated, so far as he is concerned, by the payment of a sum of money. * * *

 "It is now almost universally held that specific performance may be decreed against the party signing, although in a sense the contract lacks mutuality because it cannot be enforced against the other party, who did not sign, if he should plead the defense of the statute of frauds, since the filing of the bill by the party not signing supplies the mutuality of remedy."

Again in Sec. 37, pp. 51-2 thereof, the following appears: "The rule has been broadly laid down that the mutuality of a contract is to be ascertained as of the time when it is made. But while this is true to the extent that if when the contract is executed it is mutual it is immaterial that subsequent events have produced want of mutuality, the better opinion is that it is not essential that the mutuality of remedy exist at the inception of the contract, but that it is sufficient if such mutuality of remedy is available at the time suit is filed or even at the time of the decree, and that where the contract was originally lacking in mutuality this element may be supplied by voluntary performance on the part of the party seeking specific performance." See also Sec. 38, p. 52 thereof, where it is said: "Therefore, the doctrine that a contract wanting in mutuality will not be specifically enforced has no application if the

contract has been performed by the plaintiff. For example, the lack of mutuality cannot be set up as a defense in a suit for the specific performance of a contract to convey land, where the plaintiff fully performed the contract on his part, * * *."

■■ Substantially the same argument, made by the appellee here, was rejected by this Court in Peevey v. Haughton, 72 Miss. 918, 17 So. 378, where it was held that Haughton's bill for specific performance, signed and sworn to by him, in which he alleged that he had always been ready and willing to comply with the terms of the contract, would, because of Mrs. Peevey's signed agreement in writing, lie to compel her execution and delivery of a deed to the land in question. See also Young v. Adams, 122 Miss. 1, 84 So. 1. Some of the cases from other jurisdictions, which hold to the same effect, are Moss v. Cogle, 101 So. 2d 314 (1953), an Alabama case; Baker v. Taylor & Co., 237 S. W. 2d 471 (1951), an Arkansas case; Al-Sco Realty Co., Inc. v. Suburban Apartment Corp., 48 A. 2d 838 (1946), a New Jersey case; Classen v. Ripley, 98 N. E. 2d 868 (1951), an Illinois case; Sewell v. Dolby, 237 P. 2d 366 (1951), a Kansas case; Swanson v. Priest, 58 A. 2d 207 (1948), a New Hampshire case; Reynolds v. Dixon, 46 S. E. 2d 6 (1948), a Virginia case; Clotfelter v. Telker, 83 N. E. 2d 103 (1947), an Ohio case; Thrower v. Keltner, 213 S. W. 2d 476 (1948), a Missouri case. The contract was signed by Golden. He, or rather his heir or legal representative, was the party sought to be charged with the fulfilment. Consequently the appellant encounters no difficulty from Sec. 264, Code of 1942, Rec., the statute of frauds.

Appellee's husband and agent, while stating that the appellant never actually offered him the money, frankly admitted that he never recognized this instrument as a contract. In view of his representation that it was necessary for him to get the advice of the attorney and that

it took so long to get such advice—not in fact until after the 5-year period had expired—it is clear that he had no intention of carrying out the contract even if cash or currency should be tendered to him.

■■■ In McLain v. Meletio, 166 Miss. 1, 147 So. 878, the Court said: "The law does not require one to do a vain and useless thing. A formal tender is never required where it appears that the money if tendered would not have been received. 26 R. C. L. 624, par. 3." In Sov. Camp, W. O. W. v. McClure, 176 Miss. 536, 168 So. 611, the Court said: "Failure to make a formal tender may be excused if it appears that the tenderee would not have accepted the tender if made; but to avail himself thereof, the tenderer must show that he was able and desired to make the tender." The Court followed the above cases in Bonds v. Rhoads, 203 Miss. 440, 35 So. 2d 437.

From which it follows that this case must be reversed and remanded, and the trial court is directed to decree and enforce specific performance by the parties to this suit of each and every act and thing necessary and proper for the full consummation of the contract in accordance with the terms and provisions thereof whereby the aggregate balance of the purchase price may be paid to the appellee and, in turn, a good and valid deed of conveyance to the property shall be executed and delivered to the appellant.

Reversed and remanded with directions.

*Kyle, Gillespie, McElroy* and *Jones, JJ.,* concur.