**Mrs. S. K. FROSTAD, Appellant,**

v.

**Lloyd W. KITCHENS, Appellee.**

**No. 23743.**

United States Court of Appeals
Fifth Circuit.

May 8, 1967.

Frank T. Williams, Satterfield, Shell, Williams & Buford, Jackson, Miss., for appellant.

J. L. Lotterhos, Jr., of Henley, Jones & Henley, Hazlehurst, Miss., for appellee.

Before BELL and GODBOLD, Circuit Judges, and NOEL, District Judge.

GRIFFIN B. BELL, Circuit Judge.

This case began when the appellee, Mr. Kitchens, filed suit for specific performance against Mrs. Frostad, the appellant, in the Chancery Court of Copiah County, Mississippi. Mrs. Frostad, a non-resident of Mississippi, removed the suit to the District Court. The subject matter of the suit is an alleged contract, said to have been created by correspondence, wherein Mrs. Frostad agreed to sell Mr. Kitchens 150 acres of land. The case was tried in the District Court, findings of fact and conclusions of law were entered, and specific performance was decreed. We affirm.

Mrs. Frostad owned the Haley place, consisting of 178.6 acres of land, and the controversy involves this land less 28.6 acres which she was to reserve. Mr. Kitchens owned adjoining lands and had been renting the Haley place for several years. He set out to purchase the entire tract and the correspondence relating to his efforts and Mrs. Frostad's wishes in the matter covers a period of several months. The beginning was an agreement to have an appraisal of the property made with the costs to be borne by the parties equally. The appraisal was completed in September 1964 and Mr. Kitchens, by letter dated October 9, 1964 to Mrs. Frostad, offered to purchase the entire tract on the basis of the appraised value.

On October 28, 1964, Mr. Kitchens again wrote Mrs. Frostad, referring to a telephone conversation the night before and another on that morning, to the effect that he would purchase the Haley place with Mrs. Frostad reserving 20 acres. He stated that he would look forward to receiving a map from her showing the portion to be reserved. He also asked that she state the amount of down payment which she would require, and requested that he be allowed to pay $1,000 per year on the balance with interest at the rate of six percent. He also requested a no pre-payment penalty clause and acknowledged that Mrs. Frostad would convey only one-half of the mineral rights. Mrs. Frostad wrote Mr. Kitchens on the same day, October 28, 1964, in pertinent part, as follows:

"The line drawn on map will show you the boundary line I have in mind.

"I would want the line to run from point at the Cox line back to Lawrence or Jordan line, which gives you the 150 acres.

"We feel that use of the small acreage and house should be worth $100.00 a year.

"Should we decide to sell the home site, we will give you first choice.

"Please don't feel you are obligated to buy the land. I am not eager to sell.

"The offer to sell is only a favor to you to acquire more land joining the land you already have.

"Of course I want to retain half the mineral rights."

The map referred to in the letter was enclosed. It showed a line drawn by Mrs. Frostad which was to be the dividing line between the 150 acres to be conveyed and the 28.6 acres to be reserved.

Mr. Kitchens then wrote Mrs. Frostad under date of November 27, 1964, asking again what amount of money she wished him to pay down and whether or not his suggestion of an annual payment of $1,000 was satisfactory. He received a letter from Mrs. Frostad under the same date in which she reiterated that she would be willing to sell him the 150 acres shown on the map, retaining half of the mineral rights. She gave the price as the appraised value of $70.59 per acre or a total of $10,588.50. She pointed out that a survey would be necessary and that she would be willing to pay a reasonable amount for the survey or would sell for $10,500 and let Mr.

Kitchens stand the cost of the survey. She wanted a down payment of the amount due above $9,000 with the balance to be paid on the basis of $1,000 per year at six percent simple interest. She offered to make a warranty deed on these terms with Mr. Kitchens, in turn, to give her a note for the balance due and a first mortgage on the property.

Mr. Kitchen's secretary advised Mrs. Frostad by letter dated December 30, 1964 that Mr. Kitchens was in the hospital undergoing surgery and had instructed her to advise Mrs. Frostad that he would contact her immediately upon returning home from the hospital to make the arrangements for having the land in question transferred to him. This letter advised that a check in the amount of $100 was enclosed " * * * for use of the house and additional land he is not buying for the year 1965." The next event was a letter from Mr. Kitchens to Mrs. Frostad, dated January 16, 1965, in which he requested that her local attorney be authorized to proceed with his attorney to close the transaction by preparing the warranty deed, the first mortgage and deed of trust and notes for the balance. He expressly stated that the purchase was to be on the basis of the Frostad letter of November 27, 1964.

At this point the trouble began. The attorney for Mrs. Frostad advised her, by letter dated February 12, 1965, that a reservation of minerals did not include gravel. Mrs. Frostad had apparently stated to the attorney that she was reserving one-half of all minerals, including gravel. The attorney also advised Mrs. Frostad that Mr. Kitchens would not purchase the property if one-half of the gravel was to be reserved. The transaction was not consummated, and the suit which gave rise to this appeal followed.

Appellant urges that the court erred in several respects in decreeing specific performance. First, she contends that the contract violated the statute of frauds in that the description of the land to be conveyed was not found in the correspondence, or in other writings referred to in the correspondence from which the description could be made certain. She also contends that no valid contract was formed because the terms were not definite in that the no prepayment penalty question and the survey question were open. It is her position that her letter of November 27, 1964 required a survey and an election as to who would pay for it. In addition, it is said that there was no valid acceptance of her offer by Mr. Kitchens because he refused to close the transaction once the dispute over the reservation of one-half the gravel arose. Lastly, appellant's position is that the specific performance was barred by the failure of Mr. Kitchens to make a tender of the down payment, the note and first mortgage. Although not clear, it may be that appellant is also urging that the terms of the contract were indefinite for the additional reason that the parties were not in agreement over whether mineral rights included gravel.

The court in Welsh v. Williams, 1904, 85 Miss. 301, 37 So. 561, a case involving a suit for specific performance of a contract for the sale of land, points out the following rule which is applicable here:

"The elementary general rule, as frequently enunciated in reference to the enforcement of specific performance of contracts, * * * is that the contract must be specific and distinct in its terms, plain and definite in its meaning, and must show with certainty that the minds of the parties had met and mutually agreed as to all its details upon the offer made upon the one hand and accepted upon the other. If any of these requisites be lacking, specific performance will not be decreed by a court of equity."

See also Everman v. Herndon, 1894, 71 Miss. 823, 15 So. 135; and Hutton v. Hutton, 1960, 239 Miss. 217, 119 So. 2d 369.

Taking this as the Mississippi rule, we conclude that the District Court

did not err in finding a specific and definite contract between the parties. The price was $10,500 with Mr. Kitchens being responsible for the survey. Assuming arguendo that Mrs. Frostad's offer of November 27, 1964 required a survey, the fact is that a survey was made and used at the trial. The suggestion by Mr. Kitchens that he be given a no pre-payment penalty clause was abandoned instead of being left as an open question. The suggestion was made in his letter of October 28 but Mrs. Frostad did not respond to the suggestion. It was the offer contained in her letter of November 27 which was accepted by Mr. Kitchens. It contained no such clause.

█ The question of whether mineral rights included gravel was treated by the District Court as a question of law. We agree and also agree with the conclusion reached that gravel was not included in the mineral rights reservation. Witherspoon v. Campbell, 1954, 219 Miss. 640, 69 So.2d 384.

█ With respect to the question of tender, the law of Mississippi is that no tender is necessary where it would have been a useless act. The facts here demonstrate that a tender of the down payment, notes and mortgage would have been a useless act. It was Mrs. Frostad and not Mr. Kitchens who would not go forward because of the gravel question. See Cooley v. Stevens, 1961, 240 Miss. 581, 128 So.2d 124. The down payment due was paid into the registry of the court at the time suit was filed.

█ This leaves only the question of whether the description of the land to be conveyed was sufficiently stated, expressly or by reference, in the correspondence between the parties to avoid the Mississippi statute of frauds. § 264 (c), Miss.Code of 1942. Appellant relies on Taylor v. Sayle, 1932, 163 Miss. 822, 142 So. 3, wherein the rule is stated as follows:

"A contract for the sale of land to be valid under the statute of frauds, * * *, must describe the land with a reasonable certainty, or refer to and identify other writings by the aid of which the description can be made reasonably certain. If parol evidence is * * * admissible * * *, to complete what the appellants here say is the description of the land intended to be conveyed, the contract will then rest partly in writing and partly in parol; and when such is the case the contract is void."

The consideration of the question of description here turns on the description of a one and one-half acre tract cut out of the Haley lands. This small tract, triangular in shape with the point of the triangle intruding into the Haley lands, is the key to the description of the 150 acre tract to be sold.

Mrs. Frostad stated in her letter of October 28, 1964, supra, that she had drawn in the necessary dividing line on an enclosed map to cut out the 150 acres to be conveyed. The beginning point of the line is recited as "point" at the Cox line and is so shown on the map. This was the point of the innermost intrusion of the one and one-half acre triangle into the Haley land. It was a definite point, and was sufficient when considered in the light of the description of the triangular tract contained in the Cox deed, which was in evidence, to locate the point of beginning. The line then was to be run to adjacent lands, situated on the opposite side of the Haley lands from the Cox property so as to cut out 150 acres. The map enclosed by Mrs. Frostad was taken from the state highway map which was also admitted in evidence. It reflected the one and one-half acre tract as being a part of the J. A. Cox estate lands. The District Court found that a civil engineer who testified at the trial had no difficulty in projecting the line necessary to separate the 150 acres from the 28.6 acres with the use of these aids.

██ This was a sufficient description, considering the Frostad letter of October 28, the enclosed map, the reference to the "point" on the Cox line, and

the fact of the highway department map, to comply with the statute of frauds. Jones v. Hickson, 1948, 204 Miss. 373, 37 So.2d 625, teaches that extrinsic evidence may be used to repair a latent defect in a description to land if the clue to certainty, and thus avoidance of the statute of frauds, is contained in the writings. The reference to "point" at Cox line was the clue to the Cox deed, making it admissible, and thus making the point of beginning certain.

Affirmed.