BOWLING, Justice,
for the Court:
Appellant, Benny Roy Rogers, appeals from a replevin judgment in the Circuit Court of Winston County. We reverse and remand.
At the conclusion of the evidence offered by both plaintiff-appellees and defendant-appellant, the lower court sustained appel-lees’ motion for a directed verdict, stating that the decision was a question of law and there was no fact issue to submit to the jury. We hold that the cause should have been submitted to the jury. In discussing reasons for this, we need to relate the pertinent parts of the record.
On January 23, 1970, appellant, Benny Roy Rogers, and his partner, Byron Cannon (now deceased) purchased a new 1970 International truck from appellee, Waters Truck & Tractor Company, Inc. The purchase was financed by a retail installment contract providing for thirty-six monthly payments, which contract was then assigned with recourse to the appellee, Commercial Credit Corporation.
On January 21, 1971, appellant and his partner were delinquent in two monthly payments on the purchase contract. They lived and operated the truck in Winston County. Agents of appellees filed an affidavit in replevin before the Circuit Court of Lowndes County, the principal place of business of appellees, and a writ of replevin was issued thereon to the Sheriff of Winston County. On the same day the sheriff seized the truck as it was being driven with a load of either sand or gravel on a street in Louisville. The driver requested permission to carry the load to its destination, which was the Louisville Redi-Mix Concrete Company. This was agreeable with the sheriff and appellees’ representatives. All three went to the Redi-Mix plant, following behind the truck in the sheriff’s car. On the front seat of the sheriff’s car was Bob Wilkerson, an employee of appellee Waters Truck & Tractor Company, the retailer of the truck, and on the back seat was a Mr. Swanzee, an employee of appellee Commercial Credit Corporation.
While the truck was being unloaded, the sheriff went into the office of Redi-Mix and had a conversation with its owner, Jimmy McMillin. Wilkerson and Swanzee remained in the car. About that time appellant Rogers drove up in his car and went into the office and requested an explanation of what was occurring. There is a discrepancy in the testimony among the witnesses as to exactly what occurred and what was said after that time.
Rogers testified that McMillin owed him several thousand dollars and McMillin agreed to let him have whatever money it *261 took to pay appellees’ representatives immediately and retain possession of the truck; that he went to the car where Wilkerson and Swanzee were seated and conveyed the information to them that he would secure whatever money was necessary to make the payment from Mr. McMil-lin immediately; that the Commercial Credit Corporation representative did not enter into the conversation but that Mr. Wilkerson told him that his company and Commercial Credit Corporation wanted full payment of the balance of the contract or the truck. Rogers testified that he told the two men that he could get the money immediately from Mr. McMillin and pay them any amount necessary, including costs and late charges. Rogers went back to the office and discussed the matter again with Mr. McMillin, who then accompanied him to the car and offered Wilkerson any amount that would bring the payments current; that Wilkerson again stated he would not accept any part payment, but that he and the Commercial Credit Corporation representative would only accept complete payment of the contract.
Rogers further testified that McMillin was standing beside him and the car during this second conversation so that he would be available to get the money immediately.
Jimmy McMillin testified that he owned the Redi-Mix business and was also in the real estate and insurance business in Louisville, and that he had done business with appellant and the deceased Cannon for many years. He testified as to his version of what occurred on January 21, 1971. He described the truck of Rogers and Cannon being brought to his place of business for unloading, with the sheriff and two men following the truck and parking their car near the business office; that the sheriff got out of the car and came into the office, but that the other two men, Wilkerson, whom he knew, and the Commercial Credit Corporation representative stayed in the car. He described the arrival of appellant Rogers and told of his conversation with Rogers when he learned the truck was being seized. He testified that he told Rogers then and there that he would let him have whatever money was needed to retain possession of the vehicle; that he walked back to the car with Rogers and was leaning against the car right behind Rogers when the latter told Wilkerson that he was ready to pay any amount required to bring the account current and retain possession of the truck; that he heard Wilkerson say that they would not take part of the money but that the contract had to be paid off in full.
McMillin’s testimony was direct and positive that he heard this conversation while he was standing at the car immediately behind Rogers; that Rogers told Wilkerson and the Commercial Credit Corporation representative that he, McMillin, who was standing right there, was ready and willing to give him any money needed, and that he had it at that time. McMillin testified, “It was as good as in his hand if I told him I would let him have it.”
Witness Bob Wilkerson was called by ap-pellees. He was employed by appellee Waters Truck & Tractor Company, and had been for a number of years in the capacity of a salesman. Part of his duties included the collection of overdue accounts. He and his company had agreements with appellee Commercial Credit Corporation to assist in this duty as the finance agreements were assigned to Commercial with recourse. Wilkerson denied any conversation with Rogers at the Redi-Mix plant. He denied that Rogers made any offer to bring the payments current.
After conclusion of all the evidence the lower court, on motion of appellees, rendered the following opinion:
The court finds that at the time the truck was repossessed, the defendant was by his own admission two months in arrears and that under the contract, the Plaintiff had the right to repossess the vehicle. Whether he could have or not without replevin, he has filed the replevin and the question of the right of possession is before the Court, and the Court finds from this evidence and from the evidence of the Defendant that he has not paid — subsequently paid past due installments; *262 that the Plaintiff is entitled to immediate possession. The Court finds that the evidence clearly shows that no tender was made to pay these payments, that the only evidence offered in support of the tender was some statement from a delinquent debtor, the Defendant himself, to the effect he could pay it from an unliq-uidated claim he had with Louisville Redi-Mix, which is not a tender. The motion of Plaintiff is sustained.
The law is clear that if a proper tender was made to appellees after the truck was seized, the appellant had the right to bring the installment payments up to date, including all costs and late charges, and retain possession of the vehicle. Mississippi Code Annotated section 89-1-59 (1972) was in effect at that time and reads as follows:
Where there is a series of notes, or installment payments, secured by a deed of trust, mortgage or other lien, and a provision is inserted in such instrument to secure them, to the effect that upon a failure to pay any one note, or installment, or the interest thereon, or any part thereof, or for failure to pay taxes, or insurance premiums on the property described in such instrument and the subject of such lien, that all the debt secured thereby should become due and collectible, and for any such reason the entire indebtedness shall have been put in default, or declared due, the debtor, or any interested party, may at any time, before a sale be made under the terms and provisions of such instrument, or by virtue of such lien, stop a threatened sale under the powers contained in such instrument, or stop any proceeding in any court to enforce such lien, by paying the amount of the note, or installment then due, or past due by its terms, with all accrued costs, attorneys’ fees, and trustees’ fees on the amount actually past due by the terms of such instrument or lien, rather than the amount accelerated, and such taxes, or insurance premiums due and not paid, with proper interest thereon, if such should have been paid by any interested party to such instrument. Any such payment, or payments shall reinstate, according to the terms of such instrument, the amount so accelerated, the same as if such amount not due by its terms, had not been accelerated, or put in default. Provided, that this section shall not apply to loans made by federal land banks.
The question then is whether or not the lower court should have permitted the jury, under proper instructions, to decide whether the appellant legally tendered the amount of money necessary under the statute in order to retain possession of the vehicle. In examining the above quoted opinion of the lower court, we note that he did not mention the testimony of Mr. McMillin. As hereinbefore set out, both Rogers and McMillin testified positively that the conversations took place at the car with Wilkerson and the Commercial Credit Corporation’s representative. McMillin’s testimony was positive and direct that he went with Rogers to the car for the purpose of offering to make the necessary payments; that he stood right by the car when Rogers made the offer and Wilkerson stated that they would not accept any money other than full payment of the contract.
Appellees contend that since Rogers did not have the cash money in his hand and hold it out as a tender to Wilkerson and the Commercial Credit representative, that this did not amount to a legal tender. The law on this point is clear and has been announced by this Court in several cases, mainly: Cooley v. Stevens, 240 Miss. 581, 128 So.2d 124 (1961); Lauchly v. Shurley, 217 Miss. 728, 64 So.2d 898 (1953); Bonds v. Rhoads, 203 Miss. 440, 35 So.2d 437 (1948); Sovereign Camp, W.O.W. v. McClure, 176 Miss. 536, 168 So. 611 (1936); McLain v. Meletio, 166 Miss. 1, 147 So. 878 (1933); See also, Frostad v. Kitchens, 377 F.2d 475 (5th Cir. 1967).
All of the above cases hold that “the law does not require one to do a vain and useless thing. A formal tender is never required where it appears that the money, if tendered, would not have been received. Failure to make a formal tender may be *263 excused if it appears the tenderee would not have accepted the tender if made, but to avail himself thereof, the tenderor must show that he was able and desired to make the tender.”
The testimony of appellant Rogers and the only independent witness, McMillin, was clear that the offer was made to appel-lees’ representatives who stated in clear and unmistakable language that the payments would not be accepted and that they would accept only full payment of the contract. Wilkerson denied the accuracy and truthfulness of this testimony. This denial made it a question for the jury as to whether the tender by appellant was actually made.
Therefore, we hold that it clearly was a question for the jury as to whether or not appellant made a proper tender to make the necessary payments and retain possession of the vehicle. The cause is, therefore, reversed and remanded.
REVERSED AND REMANDED.
PATTERSON, C. J., INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.