III LOUNGE, INC., A NEBRASKA CORPORATION, APPELLANT AND CROSS-APPELLEE, V. TYLER B. GAINES, TRUSTEE, APPELLEE AND CROSS-APPELLANT.
419 N.W.2d 143

Filed February 12, 1988.    No. 86-030.

Donald W. Kleine of Kleine Law Office, for appellant.

David D. Ernst of Gaines, Otis, Mullen & Carta, for appellee.

Boslaugh, White, Caporale, Shanahan, and Grant, JJ., and Brodkey, J., Retired, and Colwell, D.J., Retired.

Per Curiam.

This is the second appearance of this case in this court. In *III Lounge, Inc. v. Gaines*, 217 Neb. 466, 348 N.W.2d 903 (1984), this court held that plaintiff, III Lounge, Inc., was entitled to specific performance of an option to purchase real estate from defendant, Tyler B. Gaines, trustee, and remanded the cause to the district court for Douglas County to enter a decree in accordance with the opinion. Plaintiff appeals and defendant cross-appeals from the order of the district court on remand, awarding damages to the defendant. We vacate in part and affirm in part.

The plaintiff commenced leasing the premises at 1515 Dodge Street in Omaha from the defendant in 1972 and operated the Canopy Lounge in the leased space. On December 7, 1981, plaintiff attempted to exercise its option to purchase the leased premises, but the defendant refused to honor plaintiff's option to purchase the property.

Plaintiff then filed action against the defendant for specific performance of the option to purchase. The district court, after hearing the case, denied the relief requested by plaintiff, and plaintiff then appealed the case to this court, the decision in which case is set forth in *III Lounge, Inc. v. Gaines, supra*. This court held that the plaintiff had complied with the conditions and was entitled to exercise its option to purchase the premises at 1515 Dodge Street and that the defendant wrongfully failed

to honor plaintiff's option to purchase. Pursuant to the mandate of the Supreme Court, the parties stipulated that all damages resulting from the defendant's failure to perform be heard and determined by the district court.

In March 1985, a hearing was held before the Honorable Stephen A. Davis, one of the judges of said court, for the determination of the damages. The district court entered an order awarding damages to Gaines, and plaintiff filed a motion for new trial, claiming that the district court had not received all of the evidence. The district court sustained plaintiff's motion for new trial, and the hearing on damages was resumed on August 26, 1985.

On November 21, 1985, the district court for Douglas County entered an order instructing plaintiff to add the amount of $12,749.34 to the purchase price of the subject premises and awarded Gaines $900 in back rent. The court also instructed plaintiff to comply with the option to purchase within 30 days. Plaintiff in turn filed a motion for new trial, challenging the district court's order of November 21, which motion was overruled by the district court. Plaintiff then perfected its appeal to this court.

In its brief on appeal, III Lounge makes three assignments of error: (1) The district court erred in awarding defendant compensation for taxes, utilities, insurance, and repairs and maintenance expended by the defendant, inasmuch as the property did not generate any rents or profits; (2) the court erred in failing to offset from the purchase price lost profits suffered by the plaintiff as a result of the defendant's failure to perform the contract; and (3) the district court erred in awarding defendant damages for plaintiff's vacation of the premises 2 months early.

Defendant cross-appeals and assigns that the court erred in denying Gaines interest on the purchase price.

The evidence in this case reveals that III Lounge, doing business as the Canopy Lounge, has been doing business at 1515 Dodge Street since 1972. John Digilio, who was the manager of the Canopy Lounge, testified on behalf of the plaintiff. He testified that the plaintiff began leasing the premises from the defendant in 1972, that the lease in question

contained an option to purchase the premises, and that the plaintiff attempted to exercise its option to purchase the premises prior to April 30, 1982, which was the date the lease in question expired, having been renewed one time since its inception.

As previously stated, this court held that the defendant wrongfully denied the plaintiff its option to purchase the premises in question. It appears from the record that the plaintiff remained as a holdover tenant of the premises from May through December of 1982 and, also, that Digilio twice attempted to tender rent, for May and June of 1982, but such tender was refused by the defendant each time, and Digilio was told to vacate the premises. It next appears that on November 1, 1982, the plaintiff was unable to renew the liquor license for the premises because it had neither a lease nor a deed to the premises. See Neb. Rev. Stat. § 53-125 (Cum. Supp. 1982).

Digilio further testified that after the plaintiff was refused the liquor license, he tried to maintain the business by just selling lunches, but he closed because it was not profitable. The record reveals that the plaintiff vacated the premises in December 1982. The 1980 and 1981 income statements, admitted into evidence, reveal that the Canopy Lounge operated at a net loss of over $1,000 in each of the 2 years. Digilio further testified that business suffered in 1982 because access to the premises was limited due to repairs on Dodge Street. We point out, however, that Dodge Street was only closed in 1982 and 1983, so it would appear that this factor had nothing to do with the net losses incurred in 1980 and 1981.

James DiPrima, who had been the accountant for III Lounge since 1971, testified on behalf of the plaintiff. DiPrima prepared the 1981 income statement which was used as the basis for an income/expense projection for the years 1984 and 1985. This was done for the reason that 1981 was the last full year that the Canopy Lounge was in business before problems with the business developed.

It appears that DiPrima did not prepare a projection for the year 1983 because he felt that he could not conservatively estimate the sales because of Dodge Street's being torn up that year. He testified that the profit projections were conservative

because the sales figures used were the same as in 1981. However, there were two noticeable differences between the 1981 income statement and the 1984-85 profit projections. First, in 1981, the plaintiff incurred a net loss of $1,101, whereas the accountant projected that the plaintiff lost $28,600 in profits because of the fact the plaintiff was not in operation in 1984 and 1985. Second, the accountant projected 1984-85 gross profits at 60 percent of total sales, although from 1980 through 1982 gross profits were running between 35 and 40 percent. The accountant attributed this difference to the possibility and assumption that excessive food costs would be eliminated inasmuch as the business was generating a loss in that area. The accountant did not increase the amount of sales from 1981 to the 1984-85 projections, partially because he anticipated liquor sales would drop off as a result of eliminating food.

The record further reveals that Jeffrey Modica, who was the property manager used by the defendant, testified on behalf of the defendant that the last rental received from the plaintiff on the property in question was on April 30, 1982. He further testified that his company had not attempted to put another tenant in the premises after the plaintiff vacated the premises because of the present damage to the building and the present litigation. Modica estimated the fair rental value of the property in its current condition to be between $150 and $200 a month. He testified that the expenses incurred for 1515 Dodge Street since the time plaintiff vacated the premises through June 30, 1985, were broken down as follows: utilities, $2,451.84; insurance, $1,691.01; real estate taxes, $5,868.85; and repairs and maintenance, $2,737.64.

He further testified that the subject property received no rentals since it was vacated and, further, that the defendant received no income from the property since April 30, 1982.

It will be helpful at this point to set out this court's scope of review. Actions in equity, on appeal to the Supreme Court, are triable de novo on the record, subject, however, to the rule that when credible evidence on material questions of fact is in irreconcilable conflict, the Supreme Court may, in determining the weight of the evidence, consider the fact that the trial court

observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite. *Pallas v. Black*, 226 Neb. 728, 414 N.W.2d 805 (1987).

In its first assignment of error, the plaintiff seeks to vacate the court's award compensating the defendant for taxes, utilities, insurance, and repairs and maintenance expended by the defendant during the delay in the performance of the contract between the parties.

In *Sechovec v. Harms,* 187 Neb. 70, 187 N.W.2d 296 (1971), we set forth a standard to use when specific performance is decreed. "In an action where specific performance is decreed, courts ordinarily attempt to place the parties in the same position in which they would have been if the contract had been performed at the time agreed upon." *Id.* at 72, 187 N.W.2d at 298. The defendant relies on this language in arguing that he is entitled to compensation for expenses incurred between the time of the offer to purchase and the time of the trial, since these costs would not have been incurred by the defendant had the property been transferred to the plaintiff in December of 1981.

In *Russell v. Western Nebraska Rest Home, Inc.*, 180 Neb. 728, 144 N.W.2d 728 (1966), we refused to allow a vendor compensation for taxes because of the failure to transfer the property at the time set for performance, which was due to the fault of the vendor, and held that it would be inequitable to allow the vendor to gain advantage from its own fault. It is clear in the instant case that if we were to allow the defendant compensation, he would gain an advantage from his own fault. The defendant would gain the advantage of possession of the premises without being liable for the expenses which ran with it. This would be true even though the defendant was at fault for failing to transfer the property at the time set for performance.

The defendant also cites language from both *Tedco Development Corp. v. Overland Hills, Inc.*, 205 Neb. 194, 287 N.W.2d 49 (1980), and *Russell, supra,* where we stated that a vendor is liable for real estate taxes accruing between the time for performance of the contract and the trial when the vendor has retained possession and received rents or profits from the land. The defendant argues that since he did not receive rents or profits from possession of the property, he should not be liable

for the taxes thereon. We find a better interpretation of the principle to be that the vendor will be liable for taxes if he is in possession and either receiving rents or profits, *or could have received rents or profits.* We further point out that it appears from the record that the defendant in this case was in possession of the property at times subsequent to the vacation of the property by the plaintiff in December 1982.

The facts in the instant case reveal that the defendant chose not to accept the tender of rent by the plaintiff during the holdover tenancy. Further, the property manager, testifying on behalf of the defendant, stated that there was never an attempt to rent the premises after the plaintiff vacated it, even though the rental value of the premises in its current condition would be from $150 to $200 per month. If we were to follow defendant's arguments in this regard, we would be encouraging the vendor in possession to choose not to use the premises productively because he would be awarded compensation for taxes by choosing not to receive rents or profits. We are of the opinion that the defendant is liable for taxes because he was in possession and could have received rents or profits.

There are additional reasons for imposing liability for taxes, maintenance and repairs, insurance, and utilities upon the defendant. It is a principle of equity that the defendant vendor has a duty to keep the property in a reasonable state of repair during delay, so that the property is in the condition it was at the time the contract was made.

The vendee would have an action against the vendor if he, the vendor, allowed the property to fall into decay. Applying this reasoning to the facts in our case, the defendant, by incurring expenses for maintenance and repairs, utilities, and insurance, was discharging a duty owed to the plaintiff, a duty the defendant had chosen by causing the delay.

Equity will also impose liability for taxes accrued between the time of contract and the time of transfer from the defendant vendor who caused the delay.

The court in *Mitchell v. Mutch*, 189 Iowa 1150, 1155-56, 179 N.W. 440, 442 (1920), stated:

> Equity will treat the covenants of warranty of his deed as warranting the title against all incumbrances resulting

from the acts of the vendor up to the date of delivery of his deed. In paying the annual taxes, therefore, appellant performed his own obligation, and that alone. The appellee was under no obligation to pay taxes, until he had obtained his title and his possession, pursuant to his contract. It cannot be said, therefore, that the appellant paid the taxes on behalf of the appellee. He paid them in discharge of his own obligation, an obligation which attached to the attitude chosen by himself in respect to the property.

Even though the defendant is liable for the taxes, insurance, utilities, and maintenance and repairs, it must be determined whether he has a right to an allowance from the plaintiff for expenses incurred.

The rule that governs the vendor's right to allowance for expenses can be concisely stated as follows: If the plaintiff is awarded rents, rental value, or profits from the premises during the delay, the defendant may deduct from them ordinary carrying charges he may have paid during the delay, including taxes, insurance, utilities, and reasonable repairs. Thus, if the plaintiff were awarded rents or profits, plaintiff would also be saddled with expenses associated with obtaining the rents or profits.

In the instant case, we find that the defendant was not entitled to an allowance for the expenses during the period of delay because the court did not award rents, rental value, or profits from the premises during the delay to the plaintiff. Accordingly, the trial court's decree awarding the defendant compensation for taxes, utilities, insurance, and repairs and maintenance should be vacated.

This brings us to the second issue of the case. The plaintiff contends that contrary to the trial court's finding, it did produce sufficient evidence to support an award for damages based on lost profits suffered during the period of delay. We are aware of the line of cases which establish that in order to place the parties in the same position as if the contract had been performed at the time agreed upon, the purchaser is entitled to a setoff from the contract price of an amount equal to the lost profits incurred during the period of delay. See, *Easton*

*Theatres v. Wells Fargo Land & Mortg.*, 265 Pa. Super. 334, 401 A.2d 1333 (1979); *Chandler Trailer Convoy v. Rocky Mt'n Mobile Home*, 37 Colo. App. 520, 552 P.2d 522 (1976); *Northeast Theatre Corporation v. Wetsman*, 493 F.2d 314 (6th Cir. 1974).

In *Nebraska Truck Serv. v. U.S. Fire Ins. Co.*, 213 Neb. 755, 331 N.W.2d 266 (1983), we stated that the plaintiff must plead and prove damages, and bears the burden of offering evidence sufficient to prove such damages. Further, the plaintiff's burden of proof cannot be sustained *by evidence which is speculative and conjectural.* We also stated in *Lis v. Moser Well Drilling & Serv.*, 221 Neb. 349, 377 N.W.2d 98 (1985), that *proof of damages to a mathematical certainty* is not required; proof is sufficient if evidence is such as to allow the trier of fact to estimate actual damages with a reasonable degree of certainty and exactness.

We must now examine the evidence offered by the plaintiff to determine whether this burden of proof was met. Plaintiff offers an income/expense projection statement prepared by its accountant as the sole piece of evidence to prove lost profits. The accountant's statement projects that the plaintiff would have had net profits of $14,300 in 1984, and the same in 1985. This projection was based upon the same amount of sales as was shown in the 1981 income statement. The accountant used the 1981 income statement because that was the last year of uninterrupted business in the Canopy Lounge.

The manager of the plaintiff's business testified that two factors contributed to the net loss incurred in 1982. First, road construction limited the access to the premises, and, second, the business was unable to renew its license to sell liquor in November 1982. However, the record shows that the plaintiff operated at a net loss in excess of $1,000 in 1980, and the same in 1981. In each of these years the business operated free from the restrictive factors existing in 1982. Thus, the plaintiff's business had operated at a net loss in each of its last 3 years.

If the accountant had relied solely on the 1981 income statement as the basis of his projections, there would have been a net loss shown in 1984 and 1985. Instead, the accountant made an assumption. He assumed that the plaintiff would

eliminate food costs in the operation of the business because it was losing money in this area. This assumption resulted in two noticeable differences. First, the gross profit was based upon 60 percent of total sales in the 1984-85 projections, while the 1981 income statement showed a gross profit based on 35.5 percent of sales. This, in turn, changed the net loss in 1981 of over $1,000 to a projection of net profits of $14,300 in 1984, and the same in 1985. In other words, the plaintiff's evidence showing lost profits is based on a faulty projection. Further, this projection is dependent upon elimination of food costs. In short, the projection coupled with the assumption was unrealistic, speculative, and lacking the general certainty required as a basis for assessment of damages.

Accordingly, we affirm the trial court's refusal to award plaintiff damages for lost profits.

Finally, the plaintiff contends that the trial court erred in awarding the defendant $900 back rent because the plaintiff vacated the premises 2 months early. It is interesting to note that the defendant failed to address this issue in both his brief and oral argument. In the instant case, both the business manager of the plaintiff and the property manager of the defendant testified that the rent was paid up to and including April 30, 1982, the date the lease expired. Additionally, the record shows that the plaintiff did not vacate the premises prior to the expiration of the lease. On the contrary, the plaintiff remained in possession of the premises as a holdover tenant until December of 1982.

In short, not only does the evidence fail to support the holding of the trial court, it directly contradicts the trial court's finding. Thus, the trial court's award of $900 damages to the defendant must be and hereby is vacated.

We now turn to the sole issue on defendant's cross-appeal. The defendant alleges that the district court was wrong in its denial of interest on the purchase price.

This court and others have stated that a vendor who remains in possession of the premises during the period of delay caused by its own failure of specific performance is denied interest on the purchase money if it is at fault. See, *Russell v. Western Nebraska Rest Home, Inc.*, 180 Neb. 728, 144 N.W.2d 728

(1966); *Reis v. Sparks*, 547 F.2d 236 (4th Cir. 1976).

We find this rule can be concisely summarized as follows: If the delay in the performance of a contract was caused by the vendor, and the purchaser is not awarded rents, rental value, or profits, and has not been in possession of the property during the delay, the purchaser is not liable for interest on the unpaid purchase money.

Applying this rule to the facts in the present case, we find that the plaintiff neither possessed the property nor was awarded rents, rental value, or profits from the property during the delay. Further, the defendant was at fault for refusing to allow the plaintiff to exercise the option to purchase the property. Thus, the plaintiff is not liable to the defendant for interest on the purchase price.

In view of what we stated above, we conclude that the judgment of the district court must be affirmed in part and reversed in part, and the cause is remanded to the district court to modify its decree in accordance with this opinion. It is so ordered.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.