Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/03/2017 09:08 AM CST

Raymond J. O'Connor and Jennifer S. O'Connor,
husband and wife, appellees, v. Kearny
Junction, L.L.C., a Nebraska limited
liability company, appellant.

___ N.W.2d ___

Filed March 3, 2017.    No. S-16-230.

1. **Specific Performance: Equity: Appeal and Error.** An action for specific performance sounds in equity, and on appeal, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent from the conclusion reached by the trial court.

2. **Equity: Appeal and Error.** On appeal from an equity action, when credible evidence is in conflict on material issues of fact, the court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.

3. **Actions: Final Orders: Appeal and Error.** The law-of-the-case doctrine reflects the principle that an issue litigated and decided in one stage of a case should not be relitigated at a later stage. The doctrine requires a final order. A party is not bound by a court's findings in an order that it was not required to appeal.

4. **Summary Judgment: Final Orders.** Partial summary judgments are usually considered interlocutory. They must ordinarily dispose of the whole merits of the case to be considered final.

5. **Estoppel.** When a party has unequivocally asserted a position in a proceeding and a court accepts that position, judicial estoppel can bar that party's inconsistent claim against the same or a different party in a later proceeding.

6. ____. Judicial estoppel should be applied with caution within a single action.

7. **Contracts: Specific Performance.** In an action where specific performance is decreed, courts ordinarily attempt to place the parties in

the same position in which they would have been if the contract had been performed at the time agreed upon.

8. **Damages: Proof.** While damages need not be proved with mathematical certainty, neither can they be established by evidence which is speculative and conjectural.

9. ____: ____. Mitigation of damages is an affirmative defense, as to which the defendant has the burden of proof.

10. **Vendor and Vendee: Specific Performance.** The general rule is that from the time when a contract of sale of land should be performed the land is in equity the property of the vendee held by the vendor in trust for him, and the purchase price is the property of the vendor held in trust for him by the vendee, and that upon specific performance the vendor is liable to account for the rents and profits and the vendee for the interest on the purchase price.

11. **Equity.** Equity treats things agreed to be done as actually performed.

12. **Courts: Equity.** Where a situation exists which is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation.

Appeal from the District Court for Buffalo County: Mark J. Young, Judge. Affirmed as modified.

Kenneth F. George and Luke M. Simpson, of Ross, Schroeder & George, L.L.C., for appellant.

Arend R. Baack, of Leininger, Smith, Johnson, Baack, Placzek & Allen, for appellees.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Cassel, J.

## I. INTRODUCTION

The assignees of a purchase option in a lease of real estate sought specific performance. The landlord initially resisted, asserting that a condition precedent had not been fulfilled. The landlord later moved for specific performance, which was ordered, but now appeals from a judgment awarding equitable monetary relief for lost rentals. We conclude that based on the content of the motion and the resulting order, the landlord

was judicially estopped from asserting the condition precedent in avoidance of equitable monetary relief. Because we also conclude that the landlord was entitled to offset the monetary award with the interest on the unpaid purchase price, we modify that part of the judgment. As so modified, we affirm the court's judgment.

## II. BACKGROUND

Kearny Junction, L.L.C. (Landlord), leased commercial real estate to a third party (Tenant), who was not a party to this suit. The lease agreement provided an option to purchase "conditional upon [Tenant's] full and faithful performance of all of [Tenant's] duties and obligations under the Lease." These words created a condition precedent.

In 2007, Tenant assigned this purchase option to Raymond J. O'Connor and Jennifer S. O'Connor, husband and wife (Assignees). At the time, Tenant had fully performed all obligations under the lease.

But for several years after the assignment, Tenant paid less than the full amount of the rent. The parties disputed who discovered the underpayment. But Landlord conceded that it had agreed Tenant could pay the delinquent rent and continue the lease. Tenant did so and thereafter paid the full monthly rental payments.

### 1. Assignees' Attempt to Exercise Option

In October 2013, Assignees attempted to exercise the purchase option. At the time of the attempted exercise, no rent was past due. Nonetheless, Landlord rebuffed their attempt, returning their tendered downpayment. Landlord maintained that because of the rental underpayments, Tenant had failed to satisfy the condition precedent. Further, Landlord maintained that the condition precedent could never be met.

Assignees objected and argued that the default had been cured. But Landlord contended that with respect to the purchase option, the acceptance of rent did not waive the default.

## 2. Settlement Negotiations
### and Lawsuit

Assignees and Landlord attempted to resolve the dispute by negotiating through counsel. After these negotiations were unsuccessful, Assignees filed a complaint in March 2014 and sought (1) a declaratory judgment determining that they had a valid purchase option and had duly exercised that option to purchase and (2) specific performance of the purchase option and costs associated with the action. Landlord filed an answer that asserted the option was lost and forfeited upon the default in rent.

Despite its stated position, Landlord offered in October 2014 to sell the property to Assignees and value the property pursuant to the terms of the purchase option by averaging three appraisals. However, a disagreement arose as to the selection of the three appraisers and the negotiations apparently halted.

In November 2014, Assignees obtained permission to amend their complaint. Before they filed their amended complaint, Landlord filed a motion. The district court treated it as a motion for summary judgment. We pay particular attention to its content.

Landlord's motion requested the court to declare that "[Assignees] have an option to purchase from [Landlord] the real property" and that "[Assignees] have duly exercised the Option." Landlord stated that it was making the motion "[n]otwithstanding the affirmative defense specifically and particularly alleged in [p]aragraph 17" of its earlier answer.

Assignees then filed their amended complaint that purported to add a third "cause of action" that sought "damages" for Landlord's delay in allowing Assignees to exercise the purchase option. Landlord filed an answer to the amended complaint, once again denying that Assignees had a right to exercise the purchase option. But in this answer, Landlord suggested that it had "consented to [Assignees'] exercise of the option" and requested that "both parties should be specifically

ordered to perform all of the terms and provisions of the Purchase Option."

### 3. Partial Summary
### Judgment Order

After a hearing on Landlord's motion, the district court issued an order sustaining it. Landlord's counsel prepared both the motion and the order. The order declared that "[p]ursuant to the Lease . . . [Assignees] have an option to purchase . . . and [Assignees] have duly exercised the Option to purchase." It also ordered specific performance by both parties pursuant to the purchase option agreement in the lease. The order continued a previously scheduled trial, apparently on the third "cause of action," to be rescheduled "upon motion of either party."

Pursuant to this order, the purchase price was calculated by averaging three appraisals. Landlord then sold the property to Assignees, and the sale closed in March 2015. The matter proceeded to trial on the remaining issue of monetary relief.

### 4. Judgment

After the trial, the district court entered a judgment, styled as an order, in Assignees' favor. The court found that the summary judgment order had already determined that Assignees had a purchase option and that they had exercised it. And the court stated that its previous determination was "the law of the case."

The judgment also required Landlord to pay "damages" of $135,426 to Assignees. This figure represented lost profits between May 1, 2014—"the date provided for closing in [the purchase option]"—and the date when the sale closed—which was March 18, 2015 (although the court once referred to March 10, which appears to be a scrivener's error). The amount was calculated by subtracting the costs of maintaining the property from the total lost rents.

Landlord filed a motion for new trial, requesting a new trial or, in the alternative, to amend or alter the district court's

judgment. The district court revised minor details of the judgment but in all material aspects overruled the motion. Landlord timely appealed, and we granted its petition to bypass review by the Nebraska Court of Appeals.

## III. ASSIGNMENTS OF ERROR

Landlord assigns that the district court erred in (1) finding that the Assignees had duly exercised the purchase option "as a matter of right"; (2) finding that under the law-of-the-case doctrine, the Assignees had a right to exercise the option "as a matter of law"; and (3) awarding damages of $135,426 plus costs.

## IV. STANDARD OF REVIEW

Although Assignees characterized their claim as three "causes of action" (for declaratory judgment, specific performance, and damages), in substance, they asserted only one cause of action—for specific performance of the purchase option. This subsumed both the declaratory and the monetary relief. In that light, we recite the appropriate standard of review.

[1,2] An action for specific performance sounds in equity, and on appeal, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent from the conclusion reached by the trial court.[1] On appeal from an equity action, when credible evidence is in conflict on material issues of fact, the court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.[2]

## V. ANALYSIS

### 1. LAW OF THE CASE

[3] The law-of-the-case doctrine reflects the principle that an issue litigated and decided in one stage of a case should

---

[1] *Ficke v. Wolken*, 291 Neb. 482, 868 N.W.2d 305 (2015).

[2] *Id.*

not be relitigated at a later stage.[3] The doctrine requires a final order.[4] A party is not bound by a court's findings in an order that it was not required to appeal.[5]

[4] But, here, before the judgment, there was no final, appealable order. Partial summary judgments are usually considered interlocutory.[6] They must ordinarily dispose of the whole merits of the case to be considered final.[7] Here, the summary judgment order did not decide the issue of monetary relief. Between the filing of the motion and the order sustaining it, Assignees filed their amended complaint. And the summary judgment order expressly reserved the unresolved issue of the third "cause of action." Thus, it did not dispose of the whole merits of the case and was not a final, appealable order. It necessarily follows that the law-of-the-case doctrine did not apply.

[5,6] Although the law-of-the-case doctrine did not apply, another rule of law dictated the same result. When a party has unequivocally asserted a position in a proceeding and a court accepts that position, judicial estoppel can bar that party's inconsistent claim against the same or a different party in a later proceeding.[8] Although we have said that judicial estoppel should be applied with caution within a single action,[9] the circumstances here support its use.

Landlord's motion and the resulting order established both elements of judicial estoppel. In its motion, Landlord admitted that Assignees "h[ad] an option to purchase" and that they had "duly exercised the Option." If the condition

---

[3] *In re 2007 Appropriations of Niobrara River Waters*, 283 Neb. 629, 820 N.W.2d 44 (2012).

[4] *Id.*

[5] *Id.*

[6] *Big John's Billiards v. State*, 283 Neb. 496, 811 N.W.2d 205 (2012).

[7] *Id.*

[8] *TFF, Inc. v. SID No. 59*, 280 Neb. 767, 790 N.W.2d 427 (2010).

[9] See *id.*

precedent had not been satisfied, there would have been no contract and, thus, nothing to exercise. But Landlord's motion expressly stated otherwise. In this regard, Landlord's position was unequivocal. And by ordering the sale, the district court accepted Landlord's position.

In arguing that the condition precedent was not satisfied, Landlord merely attempts to escape the consequences of the unequivocal position taken in its motion. Because the court accepted Landlord's position, Landlord was estopped from later asserting an inconsistent position.

## 2. EQUITABLE MONETARY RELIEF

[7,8] In an action where specific performance is decreed, courts ordinarily attempt to place the parties in the same position in which they would have been if the contract had been performed at the time agreed upon.[10] While damages need not be proved with mathematical certainty, neither can they be established by evidence which is speculative and conjectural.[11] The term "damages" is not precisely correct in this context. Because the monetary relief flows from a claim for specific performance and not for breach of contract, it is not "legal damages" or awarded as a matter of a right. It is equitable compensation to make the injured party whole.

Landlord assigns that the district court erred in awarding compensatory damages of $135,426 plus costs. In its brief, Landlord sets forth three supporting arguments.

### (a) Mitigation of Damages

[9] Landlord argues that Assignees failed to offer evidence showing that they attempted to mitigate their damages. However, mitigation of damages is an affirmative defense, as to which the defendant has the burden of proof.[12] Therefore,

---

[10] *III Lounge, Inc. v. Gaines*, 227 Neb. 585, 419 N.W.2d 143 (1988).

[11] *Gary's Implement v. Bridgeport Tractor Parts*, 281 Neb. 281, 799 N.W.2d 249 (2011).

[12] *Roth v. Wiese*, 271 Neb. 750, 716 N.W.2d 419 (2006).

Landlord, not Assignees, was required to present evidence of Assignees' failure to mitigate. This argument lacks merit.

### (b) Calculation of Ownership Expenses and Costs

Landlord argues that the monetary award was improper because the district court did not account for all the costs and expenses associated with obtaining the rents and profits. Specifically, Landlord argues that the court failed to subtract from the award the monthly interest charges the Assignees would have had to pay on a loan for the purchase money between May 2014 and March 2015 as "costs associated with purchasing and owning the Property in order to collect rent."[13]

Landlord relies upon our decision in *III Lounge, Inc. v. Gaines*.[14] There, we articulated a rule that "governs the *vendor's* right to allowance for expenses."[15] In that context, we stated that "if the [purchaser] is awarded rents, rental value, or profits from the premises during the delay [in performance], the [vendor] may deduct from them ordinary carrying charges he may have paid during the delay, including taxes, insurance, utilities, and reasonable repairs."[16] But Landlord focuses on the language that followed immediately after the rule, where we explained that "if the [purchaser] were awarded rents or profits, [the purchaser] would also be saddled with expenses associated with obtaining the rents or profits."[17] Landlord is arguing that as part of these expenses, Assignees should have proved what their mortgage interest payments would have been.

---

[13] Brief for appellant at 22.

[14] *III Lounge, Inc. v. Gaines, supra* note 10.

[15] *Id*. at 592, 419 N.W.2d at 148 (emphasis supplied).

[16] *Id.*

[17] *Id.*

But, here, Landlord is mixing apples and oranges. Read in context, we were explaining the rule governing the *vendor's* right to expenses. Assignees were the purchasers, not the vendor. The rule allows the vendor to deduct its expenses during the period of delay so that it disgorges only the net rentals it collected during the delay. And our language makes clear that it applies only to those costs *actually expended* by the vendor.

The district court allowed Landlord to deduct its real estate taxes and insurance. The court excluded the evidence of any of Landlord's other expenses. No error is assigned to those evidentiary rulings. Thus, Landlord failed to prove that it had any other expenses. This argument also lacks merit.

### (c) Equitable Placement of Parties in Grant of Specific Performance

Third, Landlord argues the court failed to place both parties in the same position they would have been if the purchase option had been exercised in October 2013. Landlord argues that Landlord should have received interest on the purchase money between May 2014 and March 2015. We agree.

[10,11] Long ago, we articulated a rule derived from basic underlying principles. The general rule is that from the time when a contract of sale of land should be performed the land is in equity the property of the vendee held by the vendor in trust for him, and the purchase price is the property of the vendor held in trust for him by the vendee, and that upon specific performance the vendor is liable to account for the rents and profits and the vendee for the interest on the purchase price.[18] In other words, Landlord owes Assignees the property's rents and profits and Assignees owe Landlord interest on the purchase price. These consequences flow from

---

[18] *Russell v. Western Nebraska Rest Home, Inc.*, 180 Neb. 728, 144 N.W.2d 728 (1966). See, also, *Sechovec v. Harms*, 187 Neb. 70, 187 N.W.2d 296 (1971).

the idea that equity treats things agreed to be done as actually performed.[19]

Once again, we stated this rule somewhat differently in *III Lounge, Inc. v. Gaines*.[20] There we said, "If the delay in the performance of a contract was caused by the vendor, and the purchaser is not awarded rents, rental value, or profits, and has not been in possession of the property during the delay, the purchaser is not liable for interest on the unpaid purchase money."[21] But our language in that case was focused on a situation where the purchaser was *not* awarded rents. In the present case, rents *were* awarded. Thus, under the general rule, Assignees are liable to account for the interest on the purchase price.

We have treated rents and profits as analytically distinct from interest on the purchase price. Other jurisdictions sometimes blend these concepts. Thus, some jurisdictions allow a vendor to offset an award of ancillary damages in a decree for specific performance with expenses of owning the property, as well as the legal rate of interest on the sale price since the scheduled closing date.[22] But where the vendor wrongfully delayed performance, the vendor will typically not be allowed to collect interest that exceeds the ancillary

---

[19] See *Dixon v. O'Connor*, 180 Neb. 427, 143 N.W.2d 364 (1966).

[20] *III Lounge, Inc. v. Gaines, supra* note 10.

[21] *Id*. at 595, 419 N.W.2d at 149.

[22] See, generally, *Qantum Communications Corp. v. Star Broadcasting*, 491 F. Supp. 2d 1123 (S.D. Fla. 2007); *Lewis v. Lockhart*, 379 P.2d 618 (Alaska 1963); *Dato v. Mascarello*, 197 Ill. App. 3d 847, 557 N.E.2d 181, 145 Ill. Dec. 411 (1989); *Crockett v. Gray*, 39 Kan. 659, 18 P. 905 (1888); *Wilcox v. Commonwealth R. & T. Co.*, 248 Mich. 527, 227 N.W. 678 (1929); *Bonds v. Rhoads*, 203 Miss. 440, 35 So. 2d 437 (1948); *Volk v. Atlantic Acceptance & Realty Co.*, 142 N.J. Eq. 67, 59 A.2d 387 (1948); *Leafgreen v. Drake's Exrs.*, 300 Pa. 369, 150 A. 656 (1930); *Greensleeves, Inc. v. Smiley*, 942 A.2d 284 (R.I. 2007); *Amoss v. Bennion*, 23 Utah 2d 40, 456 P.2d 172 (1969); *Barnett v. Cloyd's Ex'rs*, 125 Va. 546, 100 S.E. 674 (1919).

damages awarded to the purchaser or the purchaser may waive reasonable rents so as not to pay interest on the sale price.[23]

Of course, these jurisdictions are applying equitable principles to specific situations, as we are here. We perceive two common threads in the case law. First, the vendor should not profit from its own delay. Second, the purchaser should not receive a windfall that unfairly penalizes the vendor. This aligns with our understanding of the applicable equitable principles and is compatible with our case law.

With this understanding, we turn to the specific remedy applicable to this appeal. Assignees have already received specific performance of the conveyance. At this point, we are concerned only with the accounting attributable to the delay in performance.

As we have already explained, equity requires us to treat the real estate as held by Landlord in trust for Assignees. Accounting for the net rents and profits is straightforward. The district court awarded rents, net of taxes and insurance, of $135,426. Other than Landlord's argument regarding Assignees' interest expenses, which we have rejected, it does not quarrel with this aspect of the equitable accounting.

But the other side of the equitable accounting requires us to hold Assignees liable for interest on the purchase price. There may be circumstances where a vendor's conduct in delay of performance is so egregious that equity would deny any interest on the purchase price. That is not the situation here.

---

[23] See, *id.* See, also, *Reis v. Sparks*, 547 F.2d 236 (4th Cir. 1976) (within trial court's discretion to award or deny interest to vendors on purchase price); *A., T. & S.F. R.R. Co. v. C. & W.I. R.R. Co.*, 162 Ill. 632, 657, 44 N.E. 823, 830 (1896) (disallowing interest entirely where vendor "willfully" and "wrongfully" delayed performance of contract); *Coal Co. v. Findley*, 128 Iowa 696, 105 N.W. 206 (1905) (disallowing interest entirely where vendor delayed performance of contract).

The difficulty stems from the imprecise evidence regarding an appropriate rate of interest. While mathematical certainty is not required for Assignees' remedy, the mathematics of interest requires a rate. Ordinarily, the interest rate on a purchase price is set forth in the contract between the parties. Here, the parties failed to agree upon a rate.

[12] Where a situation exists which is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation.[24] One option would be a legal rate. In Nebraska, the legal interest rate is 6 percent.[25] But to allow Landlord to offset the award to Assignees with interest at a rate of 6 percent would reward it for the delay in performance. There is no evidence that it could have invested the purchase price at that rate. However, not allowing Landlord to offset the award with at least some interest on the unpaid purchase price would grant a windfall to Assignees. One of the Assignees testified that the interest rate on the loan to purchase the property was more than 3 percent and that he was unsure whether it was less than 4 percent. This provides some evidence of a rate of interest on the purchase price.

Upon our de novo review and in order to ensure an equitable result, we reduce the Assignees' monetary relief by the amount of $65,000, which approximates interest on the purchase price of $2.4 million, less the $50,000 deposit, for the period of delay, at a rate somewhat in excess of 3 percent. We modify the district court's judgment in this respect and subtract this interest from the award to Assignees, thereby reducing the monetary relief granted to Assignees from $135,426 to $70,426 and the taxable costs in the district court.

---

[24] *Strunk v. Chromy-Strunk*, 270 Neb. 917, 708 N.W.2d 821 (2006).

[25] Neb. Rev. Stat. § 45-102 (Reissue 2010).

## VI. CONCLUSION

Because Landlord's motion admitted that Assignees had an option and that the option was exercised and because the district court expressly entered an order relying upon these admissions, Landlord was judicially estopped from asserting its inconsistent position that the condition precedent was not satisfied. We also conclude that Landlord was entitled to interest on the purchase price for the period of delay and reduce the monetary relief granted to Assignees from $135,426 to $70,426 and the taxable costs in the district court. As so modified, we affirm the judgment of the district court.

Affirmed as modified.