Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/28/2018 08:14 AM CDT

DEBRA J. JUNKER ET AL., APPELLANTS, V. ELWYN CARLSON AND
JOEL CARLSON, DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
APPELLEES, SLS PARTNERS, APPELLEE, AND MICHAEL
CARLSON, ALSO KNOWN AS MIKE CARLSON,
THIRD-PARTY DEFENDANT, APPELLEE.

___ N.W.2d ___

Filed July 6, 2018.    No. S-17-356.

1. **Actions: Trusts: Equity.** An action to impose a constructive trust is an equitable action.
2. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.
3. ____: ____. On appeal from an equity action, when credible evidence is in conflict on material issues of fact, the court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.
4. **Trusts: Property: Title: Unjust Enrichment: Equity.** A constructive trust is a relationship, with respect to property, subjecting the person who holds title to the property to an equitable duty to convey it to another on the ground that his or her acquisition or retention of the property would constitute unjust enrichment.
5. **Trusts: Property: Title: Equity: Proof.** Regardless of the nature of the property upon which a constructive trust is imposed, a party seeking to establish the trust must prove by clear and convincing evidence that the individual holding the property obtained title to it by fraud, misrepresentation, or an abuse of an influential or confidential relationship and that under the circumstances, such individual should not, according to the rules of equity and good conscience, hold and enjoy the property so obtained.
6. **Appeal and Error.** Appellate courts do not consider arguments and theories raised for the first time on appeal.

Appeal from the District Court for Kearney County: Terri S. Harder, Judge. Affirmed.

George G. Vinton for appellants.

Steve Windrum, of Malcom, Nelsen & Windrum, L.L.C., for appellees Elwyn Carlson and Joel Carlson.

Donald J. Pepperl, P.C., L.L.O., for appellee SLS Partners.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, and Funke, JJ.

Cassel, J.

## I. INTRODUCTION

A trust's grantors and beneficiaries asserted claims for constructive trusts against other parties who had dealt with the trustee. After a bench trial, the district court dismissed the claims. Because we agree that the claims failed either for lack of proof or because of Neb. Rev. Stat. § 30-38,101 (Reissue 2016), which protects third parties dealing in good faith with a trustee, we affirm.

## II. BACKGROUND

In 1997, Dale E. Carlson and Carol A. Carlson (collectively Grantors), husband and wife, conveyed certain real estate to a trust known as Mill Creek Trust Company. Although the trust instrument is not a part of our record, evidence and testimony established that the intended beneficiaries of this trust were Grantors' three children: Debra J. Junker, Lynn P. Carlson, and Mike Carlson. The conveyed real estate included farmland, several buildings, and one residential home. Grantors lived in this residential home until 2006.

The property was conveyed between trusts in order to avoid taxation and Grantors' creditors until it was held by the Aebeskiver Company Trust (the Trust), of which Roger Wells (Trustee) was trustee. In his deposition, Trustee acknowledged

that the property was conveyed to the Trust for the benefit of Grantors' children.

Grantors and two of the three beneficiaries brought suit against (1) Trustee, (2) a buyer of the property, and (3) tenants who had leased a portion of the property. There were two other defendants whom we do not address, because they were dismissed from the suit prior to judgment and are not relevant for the purposes of this appeal. The suit asserted that the defendants had knowingly participated in certain transactions which constituted a breach of Trustee's fiduciary duties. The third beneficiary was later added as a third-party defendant, but his interests aligned with the other trust beneficiaries and he was represented by their counsel at trial. For convenience, we will refer to the Grantors and the three beneficiaries collectively as "Claimants." And we will disregard technical distinctions in pleadings between the trust beneficiaries.

After judgment was entered against Trustee in his separate bankruptcy action, he was dismissed from the suit. After the dismissal of Trustee, the contested issues were limited to (1) whether the transactions constituted a breach of trust and, if so, whether the buyer and tenants knowingly participated in those breaches and (2) whether the buyer and tenants were unjustly enriched.

## 1. Overview of Transactions

In December 2001, Trustee leased the farmland portion of the trust property to Joel Carlson and Elwyn Carlson (collectively Tenants), with the lease to expire in 2007. While the lease was still in place, Trustee sold the property to SLS Partners (Buyer), a company that provides capital to property owners by buying their property and leasing it back with an option to repurchase. The terms of the sale were such that, in exchange for the property, Buyer paid $200,000, as well as executed a lease and an option agreement. Buyer agreed to lease the property back to the seller for $26,405 per year, and the agreement provided the seller with the option to purchase

the property back in the first 4 years of the lease at a price which increased each year the option was not exercised.

In July 2004, even though the property had been sold to Buyer, Trustee entered into an agreement to amend the original lease with Tenants, extending it from February 2007 to February 2014.

In January 2007, the Trust exercised its option to repurchase the trust property from Buyer for $294,000 and simultaneously sold it to a third party for $515,000. In order to clear the title prior to closing, the Trust negotiated with and paid Tenants $152,000 for the relinquishment of the remainder of the extended lease.

## 2. District Court Judgment

In their operative complaint, Claimants alleged that Buyer participated in Trustee's breaches of trust and improper exercise of trust powers, resulting in a net damage to the beneficiaries of $133,000. They asserted similar claims against Tenants and alleged that they incurred $152,000 in damages. In their prayer for relief, Claimants requested to have said moneys "held in trust for them."

After a bench trial, the district court dismissed the case, finding that Buyer and Tenants were all entitled to protection under § 30-38,101, which protects third parties dealing in good faith with a trustee. Additional facts and findings from the trial and the judgment, styled as an order, are set forth in our analysis.

Claimants appealed, and we moved the case to our docket.[1]

## III. ASSIGNMENTS OF ERROR

Claimants assign, combined and restated, that the district court erred in failing to (1) find that Buyer acted in bad faith when purchasing the trust property, (2) find that Tenants acted in bad faith when they entered into the lease extension with

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Supp. 2017).

the Trust and when they received $152,000 for the relinquishment of the lease, (3) find that the $152,000 payment made to Tenants constituted unjust enrichment, (4) find that the $152,000 payment to Tenants was made under duress and coercion, and (5) grant judgment in favor of Claimants.

## IV. STANDARD OF REVIEW

[1] The parties disagree on whether the asserted claims sounded in law or equity. The discrepancy apparently stems from the parties' attempts to separately categorize the claims for restitution and unjust enrichment as theories of recovery alternative to a constructive trust. However, these "alternative" theories of recovery are grounded in Claimants' action to impose a constructive trust,[2] as evidenced by the prayer for relief that the alleged damages be "held in trust for them." And an action to impose a constructive trust is an equitable action.[3]

[2,3] On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.[4] And in such an appeal, when credible evidence is in conflict on material issues of fact, the court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.[5]

## V. ANALYSIS

[4,5] A constructive trust is a relationship, with respect to property, subjecting the person who holds title to the property

---

[2] See, e.g., *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002) (constructive trust is equitable remedy intended to prevent unjust enrichment).

[3] *In re Claims Against Pierce Elevator*, 291 Neb. 798, 868 N.W.2d 781 (2015).

[4] *Estates at Prairie Ridge Homeowners Assn. v. Korth*, 298 Neb. 266, 904 N.W.2d 15 (2017).

[5] *O'Connor v. Kearny Junction*, 295 Neb. 981, 893 N.W.2d 684 (2017).

to an equitable duty to convey it to another on the ground that his or her acquisition or retention of the property would constitute unjust enrichment.[6] Regardless of the nature of the property upon which a constructive trust is imposed, a party seeking to establish the trust must prove by clear and convincing evidence that the individual holding the property obtained title to it by fraud, misrepresentation, or an abuse of an influential or confidential relationship and that under the circumstances, such individual should not, according to the rules of equity and good conscience, hold and enjoy the property so obtained.[7]

We have previously held that a constructive trust may be imposed where (1) a third party acquires trust property from a trustee, (2) the third party had notice that the transfer is in breach of trust, and (3) the beneficiary of the trust can in equity compel the third party to restore the property to the trust.[8] But a third party "who in good faith and for value deals with a trustee, without knowledge that the trustee is exceeding or improperly exercising the trustee's powers is protected from liability as if the trustee properly exercised the power."[9]

In this case, it is undisputed that both Buyer and Tenants received interest in trust property from Trustee. However, Buyer and Tenants assert that they had no knowledge Trustee's actions were breaches of trust and that they are protected by § 30-38,101, because they dealt with Trustee in good faith. Therefore, the issues are whether Buyer and Tenants were unjustly enriched and, if so, whether they were nonetheless protected by § 30-38,101.

---

[6] *United Gen. Title Ins. Co. v. Malone*, 289 Neb. 1006, 858 N.W.2d 196 (2015).

[7] *Id.*

[8] See *Bend v. Marsh*, 145 Neb. 780, 18 N.W.2d 106 (1945).

[9] § 30-38,101(a).

### 1. Entitlement to Constructive Trust Against Buyer

In their brief on appeal, Claimants maintain that the sale of the real estate to Buyer and the following lease and option were not executed in good faith and were breaches of trust of which Buyer had actual knowledge. However, the evidence is unclear whether the sale was in fact a breach of trust, let alone whether Buyer had reason to believe that it constituted a breach of trust. In fact, the record is replete with testimony and evidence that Grantors knew of and participated in the sale of the land to Buyer.

Grantors were present when Buyer inspected the land before the sale, and Carol testified that Trustee explained the transaction to them "[j]ust about word for word" the way that Buyer's counsel did in his opening statement at the bench trial. In his opening statement, Buyer's counsel stated:

> [Buyer] buys the property, [Buyer] leases the property back to the seller for a period of years, and during the lease the seller is given an option to repurchase the property with the option price usually escalating on an annual basis.
>
> [Buyer] is in the business to make money. Their objective is to receive or make approximately 18 percent return on their investment. [Buyer] wants to make their investment return. They do not want to own the real estate.

Dale also testified that while Buyer's partners were inspecting the property, they mentioned that they were interested in purchasing it. At that point in time, Dale asked Trustee, "'What is going on?'" and Trustee supposedly responded, "'I'm the trustee. I can do what I want.'" When Dale asked Trustee why the property needed to be sold, Trustee responded, "'Well, I'm just doing it.'" Although Dale testified at trial that he did not agree to sell the land in 2004, he testified in an earlier affidavit that he "'still had strong faith in the trust arrangement and in [Trustee] as trustee through 2005.'" Dale also

admitted that he did not consult an attorney about Trustee's actions until 2007.

One of Buyer's partners testified that both Trustee and Dale had agreed to the terms of the sale before Buyer came to look at the property. The partner reiterated the terms of the agreement in Dale's presence and testified that Dale expressed that he thought it was "'a great deal.'" According to the partner, Dale was "high" and "excited" about making an investment in some sort of medical device, and he wanted the deal to close quickly so that he could get the money for that investment. Dale allegedly asked the partners whether they would be interested in investing too, but they declined.

As the sale proceeded, Buyer relied on counsel, the seller's counsel, and the title companies to facilitate the closing process. Before closing, an agent of the title company called Trustee's counsel to acquire a corrective deed. Three weeks later, Grantors executed a warranty deed, granting the property to the Trust. Then, on the day of closing, Grantors executed an affidavit stating, among other things, that they were the owners and sellers of the trust property and that there were no encumbrances on the land. When confronted with the document at trial, Carol acknowledged that her signature was on the affidavit, but stated that she could not remember signing it.

Finally, the closing statement shows, and Dale testified, that $35,000 of the proceeds from the sale was used to pay an earlier judgment debt of Dale's.

On this evidence, the district court found that Grantors were participants, and not simply unknowing bystanders, to the deal with Buyer. We agree. It would be difficult to find Buyer had notice that Trustee was exceeding or improperly exercising his authority in the sale where Grantors personally prepared documents necessary for closing.

Claimants additionally argued that Buyer should have known that the sale was a breach of trust, because Buyer purchased the land for less than half the market value, leased

the property back for more than the Trust was receiving from Tenants, granted an option to purchase "with a steep escalating option price," and received "an excessive investment return." However, these arguments attack the propriety of the sale, and a party "who in good faith deals with a trustee is not required to inquire into the extent of the trustee's powers or the propriety of their exercise."[10]

Because Buyer dealt in good faith with Trustee and had no reason to believe they participated in a breach of trust, Buyer was protected under § 30-38,101. The district court did not err in dismissing the claims for a constructive trust against Buyer.

## 2. ENTITLEMENT TO CONSTRUCTIVE TRUST AGAINST TENANTS

[6] Claimants assert that Tenants were unjustly enriched when they received the payment of $152,000 for the relinquishment of their lease, because (1) the original lease, which was drafted by one of the Tenants, was unfair and constituted a violation of an attorney or trusted relationship; (2) the lease extension and relinquishment lacked consideration; (3) Tenants had knowledge that the Trust did not own the land when they entered into the agreement to extend the lease; and (4) the relinquishment payment was made under duress and coercion. However, Claimants failed to plead their theory of duress and coercion in the court below. Because appellate courts do not consider arguments and theories raised for the first time on appeal,[11] we decline to consider the theory of duress and coercion.

### (a) Original Lease

We first dispose of Claimants' attack upon the original lease with Tenants. Claimants complain that Joel served as Dale's

---

[10] § 30-38,101(b).

[11] *Tolbert v. Jamison*, 281 Neb. 206, 794 N.W.2d 877 (2011).

attorney and abused a trusting relationship when he wrote an unfair lease. In the argument section of their brief, Claimants' sole basis for claiming the lease was unfair was that it contained a provision allowing Tenants to terminate the lease under certain circumstances. However, Tenants never terminated the lease under that provision. Accordingly, even assuming that Joel abused a trusting relationship and that the particular lease provision was unfair, we fail to see how Tenants were unjustly enriched by this provision.

### (b) Consideration for Lease Extension and Relinquishment

Claimants next argue that Tenants were unjustly enriched because they were paid $152,000 to relinquish a lease that they paid nothing to obtain. However, this argument lacks merit, because there was adequate consideration for both the extension of the lease and the relinquishment.

When Tenants entered into the amendment that extended the term of the original lease, they agreed to pay rent in exchange for the Trust's leasing the farmland to them for the new duration of the lease. According to Claimants' argument, there must be some extra consideration, apart from the terms contained within the original lease, in order for there to be consideration for the extension. They cite no authority to support that proposition, and we have not found any.

There was also adequate consideration for the relinquishment. Under the original lease and its amendment, Tenants had the right to farm the land until February 2014. In exchange for the relinquishment of that right, the parties negotiated that Tenants would be paid $152,000. Joel testified that this amount was based off the amount of projected earnings from farming the ground. Because the $152,000 payment compensated Tenants for the lost profits resulting from the loss of the right to farm the ground, we conclude that Tenants were not unjustly enriched by retaining that payment.

### (c) Validity of Lease Extension

In the remaining argument regarding lease extension, the issue is whether Tenants were aware, at the time of the extension, that the Trust did not own the property and that Trustee no longer had authority to execute the extension. In our de novo review, we conclude that the evidence was insufficient to establish that knowledge.

Tenants testified that at the time of the extension, they believed that the Trust still owned the land and that Trustee had the authority to enter into the lease, because that is what Dale represented to them. They testified that they did not discover that the land had been sold to Buyer until they went to the "ASCS office" to "sign up" the farmland for an incentive program, which was after they had entered into the extension. And, as the district court noted, there was no reason to think that Tenants would knowingly enter into a lease with someone who neither owned the property nor had the legal authority to bind the owner.

Because Claimants failed to prove that Tenants were unjustly enriched, it is unnecessary to consider whether they were also protected by § 30-38,101. The district court did not err in dismissing the claims for a constructive trust against Tenants.

### VI. CONCLUSION

For the reasons set forth above, we affirm the district court's judgment dismissing the claims set forth in the operative complaint.

AFFIRMED.

WRIGHT and KELCH, JJ., not participating.